E. J. GUILBERT, Receiver of the Buckeye Land and Town Company, Respondent, v. W. L. KESSINGER, Appellant.

Kansas City Court of Appeals, June 16, 1913.

1. CORPORATIONS: Insolvent or Dissolved: Liability of Stockholder. Where the judgment of the trial court necessarily includes a finding that defendant is a stockholder, slight evi-

dence that he was such will be sufficient to uphold the judg-ment of the court on that point.

2. ———: ———: ———. In a suit against a person to charge him with liability as a stockholder, the books and records of the corporation, to which defendant is not a party, are not admissible to prove that he was a stockholder. Such fact must be proved by other evidence. When other competent testimony has been offered, however, showing that defendant is a stockholder and has attended directors' meetings and acted as such, and has paid calls and assessments the same as other stockholders, then the records and minutes of the corporation are admissible to show that such assessments were made and to compare the assessments made on and paid by defendant with those of other stockholders.

3. ———: ———: ———: **Judgment and Unsatisfied Execution.** In the absence of a statute giving creditors the right to pro-ceed against stockholders, only those who have liens on judg-ments can do so.

4. ———: ———: **Receivers: Kansas Statutes.** Under the stat-utes of Kansas a receiver can be appointed for a corporation when it is either insolvent or dissolved. These statutes give the receiver the right to proceed against the stockholder when-ever insolvency or dissolution is proved and found to be true in any manner. Under these statutes the secondary liability of the stockholder is made an asset of the corporation itself for the benefit of all its creditors, and removes the necessity for first obtaining a judgment and having an unsatisfied exe-cution returned before a receiver can be appointed to sue the stockholders provided it is first judicially established that the corporation is either insolvent or dissolved.

5. ———: ———: ———: **Suit Against Stockholders: Necessary that all Within Jurisdiction of Court be Made Parties.** The Kansas statute does not contemplate that all stockholders shall be included in one suit, but only all those within the jurisdiction of the court, and that where stockholders live in different jurisdictions different suits can be brought against them. Equities between the stockholders can be adjusted by the court in which the receiver is appointed.

6. ———: ———. Where the action of the court in appointing a receiver is not void such appointment cannot be collaterally attacked by the stockholder when sued by the receiver for his unpaid subscriptions.

7. **PLEADING: Objection that Plaintiff Has no Capacity to Sue.** Where the alleged incapacity of plaintiff to sue appears from the facts alleged in the petition, the objection must be raised

by special demurrer, and if this is not done the objection is waived by answering and going to trial.

8. **LIMITATIONS.** Statutes of Limitation do not begin to run in favor of a stockholder in a Kansas corporation to protect him from suits for unpaid subscriptions until the right to proceed against the stockholder is created by the appointment of the receiver and the order made for him to proceed, and stockholders cannot object that such order was not made sooner.

9. ———: **Statute of Kansas.** Where, by a statute of Kansas in reference to persons outside the state, a cause is not barred in that state, a suit by a Kansas receiver based on a cause of action arising in that state is not barred in this state.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*C. H. Nearing,* for appellant.

*Jas. S. Rust* and *Lee Monroe* for respondent.

TRIMBLE, J.—The Buckeye Land and Town Company was a Kansas corporation organized in 1887, with a capital stock of $50,000 divided into 1000 shares of $50 each. It was, and is now, claimed by the plaintiff that the defendant (who is appellant here) was one of its directors and stockholders, but paid into the corporate treasury on his stock less than 20 per cent of its face or par value.

On January 6, 1899, the corporation executed a note to Houston Hay for $1046 due 90 days after date. On January 11, 1902, the corporation became, and thereafter remained, insolvent. On that day the administrator of the estate of Houston Hay, brought suit in the district court of Logan county, Kansas, to recover judgment on said note, and for the purpose of having a receiver appointed for said corporation. The petition in that suit alleged the execution and ownership of the note in sufficient terms to entitle

plaintiff to a judgment thereon, and then alleged that said corporation was insolvent, had wholly suspended business for more than one year prior to the commencement of the action, that it owed debts amounting to more than $7500, that suits were pending against it in other states, that it owned certain lands worth about $1500 as its only assets, that it was necessary for the protection of the assets and the creditors that a receiver be appointed. Three days later, January 14, 1902, the corporation entered its appearance, and E. J. Guilbert was appointed receiver and qualified, and has ever since been acting as such. On April 10, 1902, judgment was rendered on said note for $1244.74 with 6 per cent interest from date of judgment and for costs. Afterwards, on the same day, the court ordered the receiver to give the notice by publication to all creditors of said corporation to present their claims to said receiver on or before June 25, 1902, and to send to all known creditors a notice thereof by registered mail. The court further ordered the receiver to advertise and sell at public auction to the highest bidder all land and real estate belonging to said corporation and make report on or before June 30, 1902. This the receiver did, and the sale made by him of all the assets of the corporation was duly approved by said district court. Afterwards, on November 11, 1903, a further order and decree was made in said cause, in which it was found that the corporation owed seven creditors, naming them, in various amounts aggregating $14,660.15, one of which was the estate of Houston Hay deceased holding the judgment for $1244.74. Said decree also found and stated the names and addresses of the stockholders of said corporation at that time, the number of shares of each, and ordered the receiver to proceed by suit or suits or otherwise to collect all amounts due from said stockholders for unpaid subscriptions on stock and also an amount in addition thereto equal to the par value of the stock

owned by each of them for the benefit of all the creditors of the corporation until the receiver had collected a sufficient sum to liquidate all debts of the corporation and the expenses of the receivership.

In the list of stockholders so found by the court was the name of appellant as holding 100 shares of the par value of $50 each. All of the stockholders, not insolvent and dead, paid the respective amounts due from them under the above order, except appellant herein. And this is a suit begun July 27, 1905, by the receiver against him in the circuit court of Jackson county, Missouri, to recover the balance of his unpaid subscription due on the one hundred shares alleged to be held by him and the double liability thereon imposed by the laws of Kansas. The case was tried by the court on May 25, 1912, and judgment was rendered in favor of the receiver for $5,710. Defendant appealed.

Before disposing of the points involved in the case, attention must be given to the objection offered by respondent that appellant's abstract is insufficient because it fails to show by recital of record entries that the bill of exceptions was ever signed or ordered filed, or that any exception was taken to the order overruling the motion for new trial, or rather, and to be more nearly exact, that the exception appears in the record proper but not in the bill of exceptions. A careful examination of the record, however, discloses that this exception appears both in the record and in the bill of exceptions. And, while the abstract may not show all the *record entries* sufficient to perfect the appeal, yet there are *statements* showing that all the required steps were duly taken. Under rule 26 adopted by this court January 6, 1913, "if the abstract states the appeal was duly taken, then, absent a record showing to the contrary, by respondent, it will be presumed the proper steps were taken at the proper time and term." And "It shall be sufficient if his

abstract state the bill of exceptions was duly filed."
The appeal was properly taken and the case will be
considered on its merits.

Appellant's first point is that there is no evidence
that appellant ever subscribed for stock or at any time
became a stockholder of the Buckeye Land and Town
Company. As the judgment of the trial court against
appellant necessarily includes a finding that he was a
stockholder, slight evidence will be sufficient to prevent
appellant's point on this question from being successful.
In fact, if there is any evidence whatever to show
that appellant was a stockholder, we are required, to
give it effect, since we must give respondent's evidence
its fullest probative force in view of the finding of the
trial court.

It is true, as appellant claims, that, in a case like
this, where it is sought to charge with liability as a
stockholder a person who denies being such, the books
and records of the corporation, which do not contain
his signature or other similar act to which he is a party,
*if unsupported by other evidence*, are not admissible to
prove his membership in the corporation. [Hinsdale
Sav. Bank v. New Hampshire Banking Co., 54 Pac.
1051.] While the records of the corporation are evi-
dence of all corporate proceedings therein recorded
they cannot be used against a stranger to connect
him with the corporation, and until defendant has
been shown to be a stockholder by other evidence, he
is a stranger, and the records of the corporation would
be binding on it but not on him. The question of
membership in the corporation is the principal fact
in dispute and that must be shown by evidence binding
on the party sought to be charged. [2 Thompson on
Corporations, secs. 1919, 1924.]

But in this case there is more than the mere
records of the corporation to establish defendant's
membership therein. It was shown in evidence that
the stock book and other records of the corporation,

showing its orginal organization, and which would contain the signatures of those taking stock, were lost and could not be found. No receipt of defendant for a certificate or certificates of stock could be introduced because no certificates of stock were issued to anyone as none of the stock was fully paid up. Hence the absence of such binding and primary evidence was fully accounted for, and this lets in secondary evidence as to defendants' connection with the corporation. The evidence necessary to show that defendant was a stockholder does not have to be in writing. It may be shown by proof of his conduct. [3 Thompson on Corp., sec. 3656.] Persons who participate, in the character of stockholders, in the meetings of the corporations and in the conduct of its business, paying calls assessed against them in respect of stock and in various other ways, will be estopped from denying that they are stockholders whether proceeded against by the corporation itself or by a receiver for its creditors after its insolvency. [2 Thompson on Corp., sec. 1904.]

The articles of association filed with the Secretary of State for a certificate of incorporation contained the name of W. S. Kessinger. 2 Thompson on Corp., section 1936, says: "The charter of a corporation, issued by an officer of the State under a general law, is prima facie evidence that the persons named therein were members of the corporation at the commencement of its existence." While the name W. S. Kessinger may not show that W. L. Kessinger was one of the shareholders, yet it is a circumstance which may be taken into consideration when it is shown by the testimony of the directors that W. L. Kessinger was quite faithful in his attendance on the meetings of the directors and acted in that capacity. In such case the use of the letter "S" as the middle initial instead of the letter "L" in the charter could be reasonably considered a mere clerical error especially in the absence of any showing that there was a person by the name of W. S.

Kessinger. But defendant's liability does not have to rest, and cannot rest, solely upon this narrow basis of conjecture. In addition to his attendance on directors meeting, proved by the sworn testimony of one of the directors, it was also testified to that defendant paid $550 on the first assessments, that this was the amount paid in by each of the original stockholders, and that after Charles L. Kurtz became secretary and treasurer of the company the defendant Kessinger made payments to him aggregating $400 on stock owned by Kessinger. It was also shown that the assessments against the stockholders were similar in amount and on the same dates as those made on, and paid by, Kessinger, and that the assessments were made on, and paid by, Kessinger on the basis of ownership by him of $5000 of stock in the corporation. It was also testified to that no part of the stock owned by defendant was ever transferred on the books of the company to any other person. While it is true, as contended, that a person cannot be shown to be a stockholder by the declarations of officers of a corporation, yet this does not forbid such showing by the sworn testimony of such officers.

It will be noticed that, in the cases holding that the records cannot be used to establish a person's membership in the corporation, it is said the records are inadmissible, *in the absence of other evidence showing such membership*. That is, the records cannot be used, independently of everything else, to establish the defendant's connection with the corporation. But when his membership is shown by other and competent evidence, then the books may be introduced to explain acts done by the defendant, to show what those cats mean and the inevitable inference to be drawn from them when they are compared in point of time, similarity and purpose with the acts of the other stockholders. For instance, if it be shown by the testimony of a director, as was done in this case, that defendant

attended directors meetings with faithfulness and
regularity and acted as a director, that he paid calls
and assessments on his stock, then the minutes and
records are admissible against him, not only to explain
the force and meaning of the payment of such calls,
by comparing such payments with those of other stock-
holders, but also on the principle that, having attended
the meetings in person and participated therein, he
is presumed to have knowledge of what was done; and
consequently anything done with his knowledge and
implied consent is admissible to bind him. In 2
Thompson on Corporations, section 1921, it is said:
"In some cases, then, the test to be applied to the
question whether the corporate records are admissible,
would seem to be whether the party against whom
they are offered stands in such relation to the corpora-
tion that *he is chargeable with knowledge of the records;*
whether, as to him, the books are in the nature of
public books, he being connected with them in interest,
etc." The same author says in section 1922 that the
records are admissible against those acting as members.
And in section 1925, the same author says, "where
evidence has been given fixing the character of the
defendant as a subscriber or stockholder, the books
and records of the corporation are admissible for the
purpose of proving that an assessment by the directors
has been made, and the amount of the same; and
indeed they are the best evidence of such facts." So
that, when Kurtz testified that defendant was present
and acted as a director and paid calls and assessments
to him, the minutes and records of the corporation
were admissible to explain the meaning and effect of
such acts on his part, and the basis of stock on which
his assessments were paid. Most of the records of
the corporation offered in evidence were properly
excluded by the court because they were offered before
there was any evidence, *aliunde,* that defendant was
a stockholder, but the few records offered, after such

testimony was given, were properly admitted. There was evidence to support the finding of the trial court that defendant was a stockholder.

It is next urged that the district court of Logan county, Kansas, had no jurisdiction to appoint plaintiff as receiver in the case of Hay, Admr. v. The Buckeye Land and Town company. The ground of this objection is that there was no allegation, in the petition for receiver, that a judgment had been rendered against the corporation and an execution thereon had been returned unsatisfied. It is true that, unless there is a statute extending to creditors at large the right to have a receiver appointed, the only creditors who can maintain such an action must be either judgment or lien creditors. [5 Thompson on Corp,. sec. 6839.] But in this case the statutes of Kansas gave this authority. By section 4701, General Statutes of Kansas, 1901, in force at the time this receiver was appointed, the district court or judge thereof had power to appoint a receiver in a number of cases, viz. First, in an action by a creditor to subject any property or funds to his claims; and fifth, in cases, provided in the code and by special statutes, when a corporation has been dissolved, or is insolvent or in imminent danger of insolvency. Section 1310, same statutes, provided that a corporation should be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year. Section 1315, same statutes, provided that the stockholders of corporations like the one in question should be liable to the creditors thereof for any unpaid subscriptions, and in addition thereto for an amount equal to the par value of the stock owned by them, such liability to be considered an asset of the corporation in the event of insolvency, and to be collected

173 Mo. App. 44 .

by a receiver for the benefit of all creditors. By still another section of said statutes, 1302, it is provided that, if an execution shall have been issued against the property of a corporation, like the one in question, and no property can be found, such corporation shall be deemed to be insolvent. It then goes on to provide that a receiver may be appointed who can sue for unpaid subscriptions and for the additional liability. Appellant assumes that section 1302 is the only section authorizing such a suit by a receiver and that the obtaining of a judgment and the issuance and return of an execution unsatisfied is an essential prerequisite to the right to have a receiver appointed and to his right to sue. But the office of the judgment and unsatisfied execution is merely to furnish conclusive proof of insolvency. But the statutes authorize a receiver to be appointed when a corporation is either dissolved or insolvent. By section 1310 it shall be deemed *dissolved* when it has ceased to do business for more than a year; by section 1302, it shall be deemed to be *insolvent* if a judgment has been obtained and an execution against it returned unsatisfied. In the petition for receiver it was alleged that the corporation was insolvent and dissolved because it had ceased to do business for one year, and the court found this to be true. In Stocker v. Davidson, 74 Kan. 214, it was held that section 1315 above mentioned made the stockholder's liability as a corporate asset collectible in the event of insolvency *without restriction*. It was urged in that case that there had been no prior judgment and no execution, as required in section 1302, and therefore there was no right to sue until after judgment and execution issued and was returned unsatisfied. But the court held that the provision mentioned in section 1302 was merely one method of ascertaining the fact of insolvency; that there are other ways to establish bankruptcy and whenever bankruptcy is lawfully established the right to enforce the stockholder's

liability accrues. This would seem to comport with reason and sound judgment, since, if it were satisfactorily established by any lawful means that a corporation was insolvent or dissolved, it would seem to be an empty requirement that, before the stockholder could be made to pay, the useless form of obtaining a worthless judgment and the issuance of a futile execution must be gone through with. The citation from Waller v. Hamer, 65 Kan. 168, l. c. 172, made by appellant, in no way conflicts with the decision in the case of Stocker v. Davidson, since the remarks cited were not upon this point but were directed to the point that all stockholders within the jurisdiction of the court who had not paid should have been made parties. The same is true of the remarks cited from the case of Woodworth v. Bowles, 61 Kan. 569, l. c. 576. The court was not talking about whether a judgment and unsatisfied execution were essential or not, but that the plaintiff in that case could not sue as a stockholder since the statute had provided a remedy and method by which a receiver could sue for the benefit of all stockholders. In Henley v. Stevenson, 67 Kan. 4, the point decided was not whether an unsatisfied judgment and execution was the only method of establishing dissolution or insolvency, but whether a creditor could proceed by motion for execution against a single stockholder upon his individual liability as such. The case of Harrison v. Remington Paper Co., 140 Fed. 385, so far from holding that, before a receiver can be appointed in any case, there must be a judgment and an unsatisfied execution returned, holds that the statutes of Kansas provide two remedies against stockholders, one (under sections 1310 and 1315) upon the suspension by the corporation of its business for one year, and the other (under section 1302) where there had been a return of an unsatisfied execution against it. And this view is sustained in Remington v. Hudson, 64 Kan. 43, l. c.

45, 46.    See also Cottrell v. Manlove, 58 Kan. 405, l. c. 408, where it is said that, under the provisions of the first remedy, "there is no occasion to await the recovery of a judgment against the company, but action may at once be brought against its stockholders." The petition in the Kansas suit for the appointment of receiver alleged that the corporation was insolvent and had been dissolved because it had suspended business for more than one year, and the court found this allegation to be true. The theory upon which is founded the proposition that a judgment must be obtained and an unsatisfied execution returned before the stockholders can be proceeded against, is that the corporation itself and not the unpaid subscriptions is looked to by creditors for the payment of their debts; credit is given to the corporation and not to the stockholders; hence, in the absence of a statute, the judgment must first be obtained and an unsatisfied execution returned. But section 1310 is a complete negation of this theory of the liability of stockholders. The statute takes away from creditors the right to enforce liability against stockholders and gives it directly to a representative of the corporation itself for the benefit of all creditors. [Stocker v. Davidson, 74 Kan. 214.] Consequently, if a corporation is dissolved or has ceased business for a year, no judgment or execution is necessary. Merrill v. Meade, 6 Kan. App. 620. The district court of Logan county, Kansas, had jurisdiction to appoint the receiver.

But, even if its action was erroneous, it was not void since it had jurisdiction of the parties and the subject matter. Its act, therefore, is not open to collateral attack. [34 Cyc. 164.] Even if the bill seeking the appointment is defective or fails to show grounds for equitable relief, everyone is concluded by the appointment except in a direct proceeding. [34 Cyc. 165, 166.] Even if the appointment was erroneous it was not void and cannot be collaterally at-

tacked. [Cook v. Bank, 73 Ind. 256, 1. c. 259.] When a court of competent jurisdiction appoints a receiver, however irregular and erroneous it may be, it is not subject to attack in a collateral suit. [Neun v. Blackston Assn., 149 Mo. 74.] See also Hatfield v. Cummings, 152 Ind. 280, where it is held that persons who are stockholders of a corporation while litigation is pending which results in the appointment of a receiver therefor are bound thereby, and the validity of the appointment of a receiver when made by a court of competent jurisdiction is not subject to collateral attack.

Again, the absence of a prior judgment and execution clearly appeared upon the face of the petition in this case. That being so, the objection that plaintiff has no capacity to sue was waived by a failure to demur for that reason. [R. S. Mo. 1909, sec. 1800; Gregory v. McCormick, 120 Mo. 657; Alexander v. Wade, 106 Mo. App. 141; Mechanics Bank v. Gilpin, 105 Mo. 17.]

It is next contended that this suit cannot be maintained because no suit had been instituted in Kansas by the receiver to determine the amount of the indebtedness and the amount for which each stockholder should be liable. There is nothing in the Kansas statutes prescribing that such a suit must first be brought. The only reason or necessity for such procedure is that it is the duty of the receiver to collect unpaid stock subscriptions and the additional liability of such stockholders, and hold them as a fund to pay creditors, and to equalize the liabilities of the stockholders as between themselves. But the law does not require that all this be done in the suit against the stockholder to collect the amount due from him. The equalizing of the liabilities between the stockholders can be done by the receiver in the receivership case under the direction of the Kansas court after the receiver has collected the fund. The only authority

cited by appellant on this point is Waller v. Hamer, 65 Kan. 168. In that case it was stated in the plea that there were other stockholders, naming them, who had not paid into the corporation the par value of the stock owned by them, nor any portion of their statutory liability. The demurrer to the plea admitted the truth of this. The court held that, in order to "conveniently and adequately carry out" the provisions of the statute, *at least all of the stockholders within the jurisdiction of the court* should have been joined. But the facts in this case are far different. Here, the Kansas court in its decree made an elaborate finding showing the names and number of creditors, their addresses, and the respective debts due them, amounting in the aggregate to $14,660.15, all bearing interest from May 15, 1902, at the rate of six per cent per annum; also showing the names of all the stockholders, their addresses, the number of shares held by each and the par value thereof. All of this was fully set out in the petition in this suit. It was futher stated and shown that three of said stockholders, naming them, were insolvent and dead on the 11th of January, 1902, the date of the institution of the suit on the Hay note; that all the other stockholders, except the defendant, had paid their subscriptions to the capital stock in full, and in addition thereto sums aggregating $2000 and more; that at the time of the commencement of said suit for receiver, and during all the times since then, none of the stockholders were citizens or residents of or personally present in Kansas, but all were outside the jurisdiction of said district court and of all other Kansas courts; that the defendant, W. L. Kessinger, was at said time, and ever since has been, and is now, a resident and citizen of Missouri, and was and is the only stockholder within the jurisdiction of the courts of this state.

The above findings of the Kansas court and the facts alleged were again shown in this case. But if

they were not, the findings in the decree rendered by the district court in the receivership are prima-facie evidence against foreign stockholders who are not parties thereto. [Pfaff v. Green, 92 Mo. App. 560, l. c. 583; Swing v. Furniture Co., 123 Mo. App. 367, l. c. 393; Thompson on Corp. sec. 3404; Hawkins v. Glenn, 131 U. S. 319; Glenn v. Liggett, 135 U. S. 533.] Under the circumstances of this case, where the stockholders had paid up without suit, and none of them lived in Kansas and only the defendant in Missouri, a suit to determine the amount of the indebtedness and the amount for which each stockholder should be liable would not have amounted to anything more than the decree that is already rendered. In fact, it would have been only a duplication of that decree, since the only defendant upon whom service could have been obtained was the corporation, and, as it was a party to the interlocutory decree, all the stockholders were bound thereby, the same as if they had been personally served in a second suit.

The case of Evans v. Nellis, 187 U. S. 271, cited by appellant is not an authority applicable to the facts in this case. In that case the court held that the receiver had no authority to sue, not because he had not by a preliminary suit determined the amount of indebtedness due and the amount due from each stockholder, but because the facts constituting and fixing liability all arose prior to the passage of the Kansas statute giving the receiver a right to sue; that the case was governed by the statute as it existed prior to the one giving the receiver the power to bring suit for the benefit of all concerned. The statute authorizing the receiver to sue made the liability of the stockholder an asset of the corporation which could be sued for and recovered by the receiver for the benefit of all creditors; while the prior statute made the liability of the stockholder an asset which the creditor alone could recover for his individual benefit.

The liability of the stockholder in the Evans v. Nellis case having arisen under the prior statute, and the right to sue under the subsequent statute not being derived from nor evolved out of the prior statute, of course the receiver could have no power to sue.

But it is urged that the stockholders' liability may exceed the indebtedness of the corporation; some may have paid more on account of this liability than others; the receiver is authorized to collect only the amount necessary and no more; if so, then how can it be known how much is needed from each stockholder unless a preliminary suit is first brought?

The answer is that the statute provides that the receiver under the direction of the court, not in the suits against the various stockholders but in the receivership case, will adjust these difficulties and inequalities. Said statute reads as follows:

"All collections made by the receiver shall be held for the benefit of all creditors, and shall be disbursed in such manner and at such times as the court may direct. Should the collections made by the receiver exceed the amount necessary to pay all claims against such corporation, together with all costs and expenses of the receivership, the remainder shall be distributed among the stockholders from whom collections have been made, as the court may direct; and in the event any stockholder has not paid the amount due from him, the stockholders making payment shall be entitled to an assignment of any judgment or judgments obtained by the receiver against such stockholder, and may enforce the same to the extent of his proportion of claims paid by them."

In this case it will be noticed that defendant is in no danger of having to pay more than his proportionate share since the judgment against him is $5710 while the unpaid debts amount to $14,660.

Lastly it is claimed that the demand is barred by the Statute of Limitations.

The defendant was sued upon two separate liabilities, to-wit, first, for an unpaid balance of $4050 on his original subscription to the capital stock, second, on his double liability under the Kansas Constitution and statutes in the sum of $5000. The suit was begun July 27, 1905, and judgment rendered for the $4050 due on the unpaid stock subscription with interest from date of suit till judgment aggregating $5710. The decree of the Kansas court ascertaining the indebtedness and the names of the shareholders, and ordering the receiver to proceed against the stockholders was made in November, 1903, less than three years before suit was brought. There is no showing that any call for unpaid subscriptions had been made prior to this date which were not complied with. In Glenn v. Liggett, 135 U. S. 533 1. c. 543 it is said:

"Statutes of limitation do not commence to run as against subscriptions to stock, payable as called for, until a call or its equivalent has been had; and subscribers cannot object, when an assessment to pay debts has been made, that the corporate duty in this regard had not been earlier discharged."

Section 4449, General Statutes of Kansas, 1901, provides that "If when a cause of action against a person be out of the state . . . . the period limited for the commencement of the action shall not begin to run until he comes into the state . . . ." As defendant was a nonresident of the state of Kansas and was not personally in Kansas he could not, if sued in Kansas, have successfully pleaded the Kansas Statute of Limitation. Section 1895, Revised Statutes Mo. 1909, permits the Kansas limitation statute to bar a suit in Missouri founded on a cause of action originating in Kansas only when the action is barred in Kansas. [Wojtilak v. Coal Co., 188 Mo. 260, l. c. 295.]

Under the Kansas statutes, the creditor could not have a proceeding instituted against the stock-

holders until a receiver was appointed and ordered by the court to proceed against him. In 2 Thompson on Corporations, section 2002, it is said that the statute begins to run from the date when the stockholders can without obstruction, be proceeded against and this period will be different according to the nature of the liability to which the law subjects the shareholder. And in section 2003 of the same work, it is said that the statute does not begin to run until call has been duly made, and in section 2005, it is said that "where the call is made by an order of court, to be notified and enforced by its receiver, the statute does not begin to run until the date of the order." Under this view, the suit was not barred either by the statutes of Kansas or of Missouri.

There is nothing in the record to justify us in disturbing the judgment of the trial court. It did not render judgment against defendant for the double liability authorized by the Kansas statute, but only for the amount of the unpaid subscription with interest as authorized by section 3590, General Statutes of Kansas. But no complaint is made by the receiver because of the failure to include such double liability. The judgment is, therefore, affirmed. All concur.