D. R. WALKER et al., Appellants, v. MODERN WOODMEN OF AMERICA, Camp No. 5111, Respondent.

### Springfield Court of Appeals, June 17, 1915.

1. **APPEAL AND ERROR: General Finding by the Court: Evidence: How Considered.** Where a case was tried without a jury, no declarations of law having been asked or given, and there was no finding of facts but a mere announcement by the court that it found the issues for defendant, the appellate court will give respondent's evidence its fullest probative force, and the judgment will be affirmed if the finding of the court is justified upon any theory of law applicable to the case.

2. **SALES: Contract of for Portion of Building: Conditions: Evidence.** Action for unpaid balance on purchase price of the third story of a building. Evidence examined and reviewed and considered to show that the sale was made with the understanding and agreement of the vendor that certain building fund certificates of the purchaser, if not sold in the regular way, would be taken by the vendor.

3. **CORPORATIONS: Acts of: When Parol Evidence May Prove.** The acts of corporations are provable by parol in all cases where under like circumstances the acts of individuals would be so provable, unless a record of the particular act or transaction is required to be kept by the governing statutes or by-laws.

4. **EVIDENCE: Sale of Portion of a Building: When Parol Evidence May Explain Terms.** Where in the sale of a part of a

building to a corporation the only written contract is the warranty deed in which it appeared that the consideration was $2000, oral evidence was competent to explain how such consideration was to be paid.

5. **JURY: Action for Recovery of Money: Statutory Provisions as to Jury Trial.** An action for the recovery of money is triable by a jury unless a jury trial is waived. [Sec. 1968, R. S. 1909.]

6. ————: **Right to Trial By: Civil Cases: Waiver.** A jury must be demanded in civil cases or the right to a trial thereby will be waived.

7. ————: **Right to Trial By: Civil Cases: Record: Waiver.** Where the record shows that the matters in issue in a case were submitted to the court sitting without a jury, a waiver of right to trial by jury is thereby shown.

8. **APPEAL AND ERROR: Appellant's Duty to Point Out Error.** The burden of pointing out error is on the appellant. This is not accomplished by a mere contention that the trial court erred in refusing to strike out testimony of witnesses "pages —."

Appeal from Christian County Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*G. Purd Hays* for appellants.

*S. E. Bronson* for respondent.

FARRINGTON, J.—Suit for an alleged unpaid balance due on the purchase price of the third story of a building at Ozark, Missouri. The agreed purchase price was $2000. A note for $800 was given secured by a deed of trust on the property sold, there was a cash payment of $700, later a cash payment of $125, and when the answer was filed there was paid into court therewith another cash payment of $145 with interest, so that the amount involved is the remainder of the purchase price, to-wit, $230. Defendant in its answer, to balance the account, tendered forty-six non-interest bearing "Building Fund Certificates" for $5 each, which, defendant claims, the plain-

tiffs by representatives guaranteed would be sold, upon the faith of which guaranty the committee of the defendant lodge reported favorably for the purchase and the deal was closed. Defendant asked that plaintiffs be required to accept said forty-six certificates tendered or that it be given a judgment for their face value as a set-off. Defendant admitted it was an Illinois corporation authorized to do business in Missouri with a camp at Ozark.

The ten plaintiffs (D. R. Walker, J. T. Wilson, J. H. Turner, G. J. Vaughan, H. V. Reid, W. S. Chapman, J. W. Wray, Jude Hixon, Genevieve Wills, M. C. Haguewood) composed a partnership organized for the purpose of erecting and owning a three-story building at Ozark.

The third story of plaintiffs' building was conveyed by warranty deed to the defendant lodge which took possession of the same.

The case was tried without a jury, and no declarations of law were asked or given. There was no finding of facts, the court merely announcing that it found the issues for the defendant. The record being in this condition, we must not only give the respondent's evidence its fullest probative force (Guilbert v. Kessinger, 173 Mo. App. l. c. 685, 160 S. W. 17), but if the finding of the court is justified upon any theory of law applicable to the case the judgment must be affirmed. [Bowser v. Atkinson, 161 Mo. App. l. c. 454, 143 S. W. 75.]

The problem before the trial court was to ascertain the terms of the contract entered into between the lodge and the builders as there was no written contract nor any memorandum of one except the warranty deed conveying the third story to the lodge for the stated consideration of $2000, and the deed of trust securing the note for $800, and this was not made directly by the lodge.

The plaintiffs rested their case after one witness (D. R. Walker) had testified that the committee of the builders, composed of Vaughan, Haguewood and Wilson, who had authority from the builders "to make some kind of a deal to sell the hall" reported that they had sold the third story for $2000 to the lodge, and that the warranty deed was then made.

The lodge held four meetings in March, 1911, at which the proposition was discussed—March 4th, 8th, 18th and 22d—the same being accepted at the meeting of March 22d. The minutes of the meeting of March 4th show that G. J. Vaughan, representing a company intending to erect the building, submitted a proposition offering the hall complete for $2000; that a vote was taken by ballot to determine which of two possible locations would best suit the membership which resulted in the choice of the "Vaughan location"— the third story of plaintiffs' building; that a motion was carried to the effect that the Vaughan proposition be accepted provided the necessary funds could be raised by the next meeting of the camp at which time a definite answer would be given to the company; and that on motion a special committee was elected to formulate plans for raising funds, and to raise the necessary amount, composed of Haguewood, Young, Hartley, Bryant, Logan, Breazeale and Kerr. There appears to be nothing more in the minutes of the lodge concerning the transaction until March 22d, when the committee last mentioned made the following report: "We, your committee on building, beg leave to report as follows: We have on hand and in B. & L. about $700; have sold 100 non-interest bearing certificates at $5 each, $500; total assets, $1200; leaving balance of indebtedness for the lodge room, $800. The parties building propose to take this in ninety-six monthly notes of $11.33 per month, which is the principal with eight per cent interest." The minutes recite that on motion the report of the committee was adopted, and

the managers authorized to proceed to issue certificates as stated and collect the money from the members taking certificates and turn the money in to the clerk; and that on motion the managers were authorized and directed to contract with the building company for the hall. This was, therefore, no more than a report of a committee, an acceptance thereof, and an authorization to the lodge officials to enter into a contract with the builders, and was not in any sense a record of any contract between the lodge and the builders.

The "Building Fund Certificates" were written, ten-year, non-interest bearing, obligations of the camp at Ozark for five dollars each, prepared for issuance to members whose names would be filled in, were transferrable, and were to be dated and signed by the managers and attested by the clerk. The certificates provided that they would be receivable at their face value by the clerk in payment of the adoption fee of any candidate for beneficial membership in the camp whose application had been secured by the holder of the certificate presented.

Witness Reid for the defendant testified that he was clerk of the local camp at Ozark at the time the building proposition was being considered and that he was present at the meeting when the report of the building committee was presented; that after the report was read and before it was adopted there was considerable discussion, and that this was in the presence of Vaughan, Haguewood and Wilson representing the builders; that the question was asked of them, "Have you actually sold the certificates?" and that Haguewood and Vaughan representing the builders replied, "We guarantee them." He testified that Wilson was present and took part in the debate and sanctioned that statement; and that they stated "they had authority from the builders to do so." He testified that on that statement and because of that statement the lodge ac-

cepted the report of its committee, and that otherwise it would not have been adopted; that it was understood, agreed and repeatedly reiterated that the hall would not be purchased unless the money was raised by the sale of these certificates. He stated that the lodge had offered the certificates to the builders who had refused to accept them; that the certificates represent cash and that every one of them is good for five dollars; that as clerk of the camp he filled out certificates with names furnished by Haguewood and turned them over and received the money ($125 paid and $145 tendered into court). He admitted that the money so received from time to time was turned into the general treasury and was used in the general conducting of the camp business as there was no order of the camp setting it aside as a special fund, and that the two cash payments last referred to came out of the general treasury.

Haguewood, one of the plaintiffs, was introduced as a witness by the defendant. He was a member of the local camp. He testified that he was present at the lodge meeting when the question was asked whether the certificates were actually sold, and that he thinks Vaughan replied that they were guaranteed, and that he did not object to that statement; that Vaughan, Wilson and himself took it upon themselves to represent the builders as they were the only ones who were also members of the lodge.

Kerr, a member of the building committee of the lodge, testified concerning a conversation with Haguewood who was also a member of that committee: "I told Mr. Haguewood the only way the committee would recommend the purchase of the hall would be for the builders to guarantee the payment of the 100 shares at $5 each and he should see them before the meeting time so we could make our report. I met him in the Ozark Drug Store after supper and asked how he got along; he told me he had seventy-seven sold, or con-

tracted for; I asked what they decided on the guarantee; he said they told him to guarantee the sale of the 100 shares and I says: 'Well, if they guarantee them, we will make the report and recommend that we could buy the hall, or report that we had raised the money,' and Mr. Haguewood and I wrote out the report of the committee and they all signed it except Mr. Breazeale.''

There is a great deal of testimony in the record to the same effect as that detailed.

Plaintiffs' rebuttal creates an irreconcilable conflict. Wilson, for instance, testified that he was not a member of the committee representing the builders and denied that Vaughan made a statement at the lodge meeting that they (the builders) would guarantee the sale of the 100 five dollar certificates. And Vaughan testified positively that he did not at any time guarantee the payment of any of the certificates and that he had no authority from the builders to do so, but he stated that he did represent the builders at the lodge meeting of March 22d. He says that Haguewood, a builder, but also a member of the lodge and chairman of the soliciting committee of the lodge to sell certificates, was the one who made the guarantee. Haguewood then denied that he ever guaranteed payment of the certificates, and testified that the lodge tried to hire him later on to sell the remainder of the certificates. He was asked: ''Who did you understand that Mr. Vaughan was representing when he said they would guarantee the rest of the certificates?'' And he answered: ''Well, I suppose he was representing the building company.'' Plaintiffs Walker, Wray, Chapman and Turner, all builders, testified that they never authorized anyone to guarantee the payment of any certificates.

We think there was abundant evidence to justify the ruling of the trial court in favor of the defendant. There was no written contract. That there was a pur-

chase and sale for $2000, that the note for $800 secured by deed of trust was given, that the cash payment of $700 was made, and that the other two cash payments of $125 and $145 respectively were also made, is all undisputed. A warranty deed was executed and delivered and defendant is in possession. The whole contest centers upon the relationship of the builders to the certificates, and we think the evidence overwhelmingly shows that the three partners who had authority from the other builders—according to Walker's testimony—"to make some kind of a deal to sell the hall" made the deal upon the condition that the builders would take care of the certificates, would guarantee that they would be sold, and that this could only mean that unless the certificates were sold in the regular way the builders would take them over. This means that the builders will either have to take and keep the remaining certificates until the end of the ten-year period, or they may take them and sell them to members of the local camp who in turn may get their money back by securing new members for the lodge.

But appellants contend that the court erred in permitting members of the lodge to testify to what was done in the camp meetings "as it is a corporation, and the deal, if ever consummated, was reduced to writing and was and is a matter of record" and that "the record of the camp was the best evidence and the only evidence admissible as to what action the defendant camp took." This objection appears on almost every page in the abstract. The trouble with the contention is that it is based on the premise that "the deal, if ever consummated, was reduced to writing and was and is a matter of record," which is entirely without foundation. The only record made was as to a report of a committee. If there had been a record made of the contract, of course it would be the best evidence. The cases cited by appellant refer to municipal corporations which are required to speak only by their

records.  Appellant does not cite any statute or de-
cision to the effect that a corporation such as the de-
fendant is bound to make a record of every transac-
tion it undertakes on penalty of not being able to prove
it in the courts—in other words, that such a corpora-
tion as this speaks only by its record.  "The settled
law is now believed to be that the acts of corporations
are provable by parol in all cases where under like
circumstances the acts of individuals would be so prov-
able, unless a record of the particular transaction is
required to be kept by the governing statute or by-
laws.  In such cases if there be no evidence on the
records of the corporation, the act in question may
be proved by the testimony of witnesses."  [10 Cyc.
1032, citing Southern Hotel Co. v. Newman, 30 Mo. 118;
see, also, Leckie v. Bennett, 160 Mo. App. l. c. 157, 141
S. W. 706; Preston v. Lead Co., 51 Mo. 43; Beach v.
Stouffer, 84 Mo. App. l. c. 397, 398; Taussig v. Rail-
way Co., 166 Mo. l. c. 32, 33, 65 S. W. 969.]  The only
written contract in this transaction was the warranty
deed in which it appeared that the consideration was
$2000.  The oral testimony was competent to explain
how this consideration was to be paid.

This was an action for the recovery of money.
Hence it was triable by a jury unless a jury trial was
waived.  [Sec. 1968, R. S. 1909.]  Appellants in a mo-
tion in arrest of judgment assigned the ground that
"upon the record said judgment is erroneous," and
now insist that the trial court erred in overruling the
motion because the record does not show the waiver of
a jury by any of the three methods specified in section
1970, Revised Statutes 1909, citing Frowein v. Poage,
231 Mo. l. c. 90, 91, 132 S. W. 241; Briggs v. Railway
Co., 111 Mo. l. c. 175, 20 S. W. 32; Brown v Railway
Co., 69 Mo. App. l. c. 420; and Lilly v. Menke, 126 Mo.
l. c. 211, 212, 28 S. W. 643, 994.  In the case first cited,
the motion in arrest, as here, did not set forth speci-
fically the denial of a jury trial, but was in the language

used in the motion in arrest in our case, and the court held that the point could have been taken advantage of even if no motion in arrest of judgment had been filed. [See, also, Batterton v. Sims, 73 Mo. App. 353, 354, and cases cited.]

But it is held by our Supreme Court that in civil cases a jury must be demanded or the right to a trial thereby will be waived. [State ex inf. Attorney-General v. Arkansas Lumber Co., 260 Mo. l. c. 277, 169 S. W. l. c. 165, citing 24 Cyc. 161; Chicago, M. & St. P. Ry. Co. v. Randolph Town-Site Co., 103 Mo. l. c. 469, 470, 15 S. W. 437; Merrill v. City of St. Louis, 83 Mo. l. c. 251, 252; Pike v. Martindale, 91 Mo. l. c. 278, 1 S. W. 858; Kansas City v. Woerishoeffer, 249 Mo. l. c. 24, 155 S. W. l. c. 783.]

And in the case of Bruner v. Marcum, 50 Mo. 405, the entry of judgment showed that the parties ''appeared and submitted the case for trial to the court.'' The court held that this entry could receive no other construction than that a jury trial had been waived. In our case, the record entry of the judgment is to the same effect, to-wit: ''Now on this day comes this cause on to be heard, and now come the plaintiffs herein by their attorney of record, as well as the defendant herein by its attorney of record, and both parties announce ready for trial, and all and singular the matters in issue are submitted to the court sitting as a jury,'' etc. [See, Lutesville Milling Co. v. Hunt, 164 Mo. App. 358, 144 S. W. 1109; The Barber Asphalt Paving Co. v. O'Brien, 128 Mo. App. l. c. 277, 278, 107 S. W. 25.]

In our case of Reckendorfer v. Roberts, 170 Mo. App. 176, 155 S. W. 495, the judgment on a motion to assess damages on an injunction bond recited ''. . . comes now the plaintiff by his attorneys, and also comes the defendants in person as well as by their attorneys, and, both parties answering ready for a hearing, the court doth proceed to hear, try, and determine

the issues . . ." It did not appear, therefore, in that judgment that the parties *submitted the case to the court* as was true in the cases cited in the next preceding paragraph. We desire to say that insofar as the opinion in the Reckendorfer case might be construed as holding that the failure of the judgment or minutes to show a waiver of trial by jury may only be taken advantage of by filing a motion calling the attention of the court to the defect, it is hereby corrected. [See, Frowein v. Poage, 231 Mo. l. c. 91, 92, 132 S. W. 241.]

Appellants make the contention that the trial court erred in refusing to strike out the testimony of C. E. Reid and other witnesses "pages ——" of the record, as said testimony did not tend to prove any issue in the case and was not germane to the pleadings. The burden of pointing out error is on the appellant and this is not accomplished by leaving blank spaces. However, in examining this record to ascertain whether there was substantial evidence to support the finding, we noticed the objections to testimony given by witness Reid and other witnesses, and the motions made from time to time to strike out answers given, and all of the objections and motions are based upon the proposition that this defendant corporation made a written record of the consummation of the deal which was the best evidence and that this corporation could speak only by its record. What is said in the first branch of this opinion sufficiently disposes of such a contention.

And we have likewise indicated by what has been said that appellants' last contention should be overruled. It is to the effect that the finding is against the weight of the evidence and the law under the evidence.

After a careful examination of the record we find no reversible error. The judgment is accordingly affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.