[Civil No. 3590. Filed October 21, 1935.]

[50 Pac. (2d) 560.]

In the Matter of HULL COPPER COMPANY, a Corporation. THE STATE OF ARIZONA, Appellant, v. ROBERT E. TALLY, Trustee, et al., Appellees.

Mr. Arthur T. La Prade, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General; and Mr. John L. Sullivan, Attorney General, and Mr. Wallace W. Clark, Assistant Attorney General, for Appellant.

Mr. Howard Cornick and Mr. Alfred B. Carr, for Appellees.

LOCKWOOD, C. J.—This is a proceeding to determine who is entitled to certain distributive shares of the assets of Hull Copper Company, a corporation. The facts, with one exception, are not in dispute and may be stated as follows:

Hull Copper Company, a corporation, hereinafter called the company, was a corporation duly organized under the laws of the territory of Arizona and having many thousands of stockholders distributed over all parts of the United States. It owned a considerable amount of valuable property, and on the 22d day of September, 1922, by proper corporate action, sold all its assets of every nature, except the cash in its treasury, for $2,250,000. After the payment of all the corporate debts, there remained as its sole asset more than $2,000,000 in cash, and in the legal manner this money was ordered divided *pro rata* among the stockholders, and the board of directors was instructed to take such steps as would be necessary for dissolution of the company and a surrender of its corporate franchises. Thereafter, and on the 22d day of December, 1922, by order of the superior court of Yavapai county, it was duly and regularly dissolved, but the then board of directors were continued as trustees for the purpose of closing its affairs. In pursuance of their duty as such trustees, the board of directors made every effort to distribute to the stockholders of record their proportionate share of its assets, as aforesaid. Most of the stockholders were promptly found, and their share paid to them, but at the end of over thirteen years there still remained in the hands of the trustees the sum of $46,309.20, representing the distributive shares of over 600 stockholders of record who had not been found. Thereupon the trustees filed this proceeding together with a report of their action praying that

the report be approved, and that there be a determination of what should be done with the undistributed assets aforesaid, and that they be discharged from their trust. The state of Arizona answered, claiming that such undistributed assets escheated to it for the benefit of the general fund under the provisions of sections 4304–4310, Revised Code 1928. Certain stockholders who had already been paid their distributive share also appeared, demurring to the state's answer, and alleging that the money remaining belonged proportionately to the stockholders who had already received a share of the assets. The theory of the answering stockholders, as set forth in their pleadings, was that those stockholders who on the face of the corporate records were entitled to the $46,309.20, as aforesaid, as their distributive share of the assets of the company, as a matter of fact were fictitious persons who never had any existence, and such being the case, the remaining money belonged to the stockholders who had been found and should be distributed *pro rata* among them. This claim was supported by the trustees. The position of the state was that the stockholders who had not been found were in reality of the class described in section 4304, *supra,* which reads as follows:

"§ 4304. *When property escheats.* If any person die, seized or possessed of any property without any devise or bequest thereof, and having no heirs, or where the owner of any property, without any devise or bequest thereof, and having no heirs, shall be absent for the term of seven years, and is not known to exist, such estate shall escheat to and vest in the state."

And that, by virtue of such section, the money in question escheated to the state for the benefit of the general fund.

The only evidence before the court on the question of whether or not stockholders who had not been found were actual *bona fide* stockholders of the corporation was the stock book of the company, which showed that these stockholders had had issued to them certificates for certain amounts of stock of the company, which certificates had never been returned for cancellation, and the testimony of Robert Tally, the former president of the company and one of the trustees of the °fund in litigation. This testimony reads, so far as it might be considered material to the issue, as follows:

"Q. Will you just state what was done? A. We, of course, had a list of all stockholders available in the stockholders .report and complete reports were mailed to that list in the entire transaction and checks were mailed and of course in most cases received, accepted and cashed. In numerous cases they were returned. Some of the parties got theirs. There were a few cases where the parties had the stock and sold it and the owner was not of record. In some cases they received the check and cashed it and others had sold the stock to someone else. If there was a man who lived at a certain address and he was not there we made inquiries from neighbors to ascertain if possible where he moved to. In some cases the parties had moved somewhere else and we wrote to their neighbors and made inquiries about their whereabouts. In that way everything possible was done to try to locate the shareholders.

"Q. These were all stockholders of record of the company? A. Yes; we proceeded and sent checks for several years there afterwards. We would locate one once in a while—maybe several a year or a dozen a year. On this last one there were several who came in and got their checks and there were several where their dividend checks were mailed to them. . . .

"A. . . . I do not know of a single case where an Arizona stockholder has not received his check. . . .

"Q. Do you know how many of these stockholders there were that returned their distribution checks?

. . .

"Mr. Crable: It is plead, Mr. Strouss, about 28.

. . .

"Mr. Tally: It is a fact."

The judgment of the trial court sustained the theory of the answering stockholders, and a distribution of the remaining assets was ordered to be made *pro rata* among the stockholders who had been found. From said judgment, this appeal was taken by the state.

It is contended by the appellees, and not denied by the state, that if as a matter of fact the stockholders of record, some 600 in number, who have not yet been located, are fictitious persons who never had any real existence, the true stockholders are entitled to have the remaining assets of the company distributed among them. Nor is there any serious question that if such stock was properly issued to *bona fide* stockholders, their shares may not be distributed to their costockholders. What does the evidence show as to their existence? It is urged on behalf of the state that the books of the company are *prima facie* evidence that the persons whose names appear on the corporate records as having had stock issued to them which has never been canceled are *bona fide* stockholders, and that the burden of proof is on the appellees to show that such records do not represent the true facts in this respect. On first examination of the adjudicated cases, there seems to be a conflict of authority upon this point. Appellees have cited to us as sustaining the position that the corporate records are not even *prima facie* evidence of who are stockholders of a corporation the cases of *Carey* v. *Williams*, (C. C. A.) 79 Fed. 906; *Sigua Iron Co.* v. *Greene*, (C. C. A.) 104 Fed. 854; *Girard Life Ins., Annuity & Trust Co.* v. *Loving*, 71 Kan. 558, 81 Pac.

200; *Guilbert* v. *Kessinger,* 173 Mo. App. 680, 160 S. W. 17; *Hinsdale Sav. Bank* v. *New Hampshire Banking Co.,* 59 Kan. 716, 54 Pac. 1051, 1052, 68 Am. St. Rep. 391. It will be found, however, upon an examination of these cases, that in the majority, if not all, of them there was an attempt to establish some form of liability on the part of the alleged stockholder, and the decision that the books of the corporation were not even *prima facie* evidence of the defendant being a stockholder was confined to that class of cases.

In *Hindsale Sav. Bank* v. *New Hampshire Banking Co., supra,* the court states the rule to be as follows, quoting from Thompson on Corporations:

"What would appear upon reason to be the indisputable rule of evidence is thus stated by the author named: 'Perhaps no rule broad enough to cover all cases can be stated as to when, in an action to charge a shareholder, the books of the corporation are evidence against him. It may be stated that, as between members of the corporation, they are evidence of all corporate acts therein recorded; but they cannot be used against a stranger to connect him with the corporation, unless made so by act of the legislature.' "

 Many well-considered cases, on the other hand, hold that the stock book is *prima facie* evidence of membership of a corporation in all cases regardless of whether they are between stockholders or between a stockholder and a third person. In *Turnbull* v. *Payson,* 95 U. S. 418, 421, 24 L. Ed. 437, it is said:

"Where the name of an individual appears on the stock-book of a corporation as a stockholder, the *prima facie* presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption; and, in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast

upon the defendant. *Hoagland* v. *Bell,* 36 Barb. (N. Y.) 57; *Hamilton & D. Plank Road Co.* v. *Rice,* 7 Barb. [(N. Y.) 157] 162; *Rockville & W. Turnpike Road* v. *Van Ness,* [Fed. Cas. No. 11,986] 2 Cranch C. C. [449] 451; *Mudgett* v. *Horrell,* 33 Cal. 25; *Coffin* v. *Collins,* 17 Me. 440; *Merrill* v. *Walker,* 24 Me. 237." *Finn* v. *Brown,* 142 U. S. 56, 12 Sup. Ct. 136, 35 L. Ed. 936; *Keyser* v. *Hitz,* 133 U. S. 138, 10 Sup. Ct. 290, 33 L. Ed. 531.

We are of the opinion that in this proceeding, at least, the stock book of the corporation was *prima facie* evidence of the existence of the stockholders named therein and of their interest in the corporation, and that the burden was upon anybody denying their existence to overcome that presumption by appropriate proof. What proof was offered upon this point? There is merely the testimony of one of the trustees that when the original dividend checks were mailed to all the stockholders of record many of them came back; that some 28 parties who received the checks returned them stating that they had never been stockholders in the corporation; that further repeated efforts were made to find the missing stockholders, and that with each effort a few more were discovered, some of them the last time such an effort was made, but that at the end of thirteen years there still remained some 600 who could not be found. We think this is insufficient to overcome the *prima facie* showing of the books. The very fact that from time to time some of the missing stockholders were discovered and their shares paid to them would be an indication that all of those shown on the books did exist rather than they did not. Even the fact that 28 returned the checks is not proof of the nonexistence of the stockholders to whom these certificates for shares had been issued. It is a well-known fact that in this country there are many people of the same name. The writer of this opinion

has but recently received a letter addressed to him by name which evidently belonged to some other party of the same name of whose actual existence there was no doubt, and such instances can undoubtedly be duplicated in the experience of many people. We are of the opinion there is not sufficient evidence in the record to overcome the *prima facie* showing that the persons whose names appear in the stock books of the corporation were *bona fide* persons to whom stock had been properly issued. Such being the case, there is not sufficient evidence to sustain the finding of the trial court that the more than 600 of such stockholders were not actually the owners thereof when the stock was issued, and such finding being necessary to authorize the distribution of their share of the corporate assets to the other stockholders, the judgment of the trial court for such distribution cannot be sustained.

We consider then the claim of the state. This, as we have stated, was based on the theory that the owners of the stock in question were persons falling within the class described in section 4304, *supra.* If the claim of the appellees cannot be sustained, still less, we think, can that of the state, as set forth in its pleadings, be upheld. In the first place, the only evidence as to the residence of these stockholders is that they were nonresidents of the state of Arizona. In such case, since the property in question was personal in its character, it would ordinarily follow the residence of the owner, and an escheat proceeding in this state would not lie. This is apparently recognized by the statute, for it refers to the owner being "absent for the term of seven years," which certainly implies absence from the state of Arizona, and therefore residence in this state. In the second place, there is no showing whatever as to whether the miss-

ing stockholders have any heirs. While this, of course, may be established by circumstantial evidence, we think that some showing on this point is required. 10 R. C. L. 614. We are of the opinion that the state has failed to show the money in question has escheated to it under the provisions of sections 4304–4310, *supra*.

■ What, then, shall be done with it? We think that this question is answered by a reference to the provisions of section 8, article 11, of our Constitution, which reads, so far as material, as follows:

"Section 8. A permanent State school fund for the use of the common schools shall be derived . . . from all unclaimed shares and dividends of any corporation incorporated under the laws of Arizona."

This provision is substantially an escheat to the state, but it is not covered by the principles or limited by the conditions of sections 4304–4310, *supra*.

It is not obnoxious to any provisions of the Federal Constitution, for it applies only to corporations incorporated under the laws of Arizona, and we think that so far as such corporations are concerned, it clearly lies within the power of the state to regulate the disposition of any unclaimed shares and dividends thereof. It is not necessary by the terms of the Constitution that it appear that the true owner of such property is dead, or whether or not he has left heirs. It is sufficient to show that the shares and dividends have been unclaimed for such a time as would indicate that they probably will not be claimed. Under such circumstances, we think the state has the right to bring an appropriate action in equity against the trustee who may hold such shares and dividends and recover the same for the use of the permanent state school fund, in which case the state will hold the money, unless and until the true owner appears, in

which case, when he establishes his right thereto, following the presumption of law that the legislature will do justice to all, we must assume that a proper appropriation for the relief of such person will be made on application to that body.

It is true that the state has not set up this constitutional right in the pleadings, and, under the ordinary rules of pleading, would not be entitled to recover in this particular action. However, since it is obvious that the appellees cannot recover without further evidence, and there is no suggestion that any such evidence can be produced to support their theory of the case, we think that in order to prevent a useless formality, and in the interest of justice, it is a proper case for an application of the provisions of section 3681, Revised Code 1928.

The judgment of the superior court is reversed and the case remanded, with instructions to deny the petition of appellees that the funds in question be distributed to the stockholders who have already received their share of the assets of the company, and to enter judgment that it be paid to the state of Arizona for the use of the permanent state school fund described in section 8, article 11, of the Constitution, after deducting therefrom the amounts paid and to be paid to stockholders who have been found since the date of the judgment heretofore rendered in the trial court, together with the necessary and reasonable expenses of the trustee incurred in the administration of said trust fund, to be determined by the judge of the trial court and subject to review by this court, at the request of any of the interested parties made within thirty days after such determination, together with the costs of this proceeding in both courts.

McALISTER and ROSS, JJ., concur.