FINIS MORROW AND GARY FRANCE, PARTNERS, DOING BUSINESS UNDER
THE FIRM NAME AND STYLE OF MORROW & FRANCE, RESPONDENTS,
v. WABASH RAILWAY COMPANY, APPELLANT.

Kansas City Court of Appeals. November 9, 1925.

1.—Carriers—Carrier's Evidence Held Not to Require Demurrer be Sustained for Lack of Evidence of Its Negligence. In an action for damages to animals in transit, as against demurrer, evidence held sufficient to show that animals were injured by negligence of defendant.

2.—Same—Negligence—Special Contract Held Not to Supersede Common-law Liability of Carrier, but Modified it. Provisions of special contract, exempting defendant from its common-law liability for injuries to animals in overloading car, did not supersede its common-law liability, but merely consituted a modification of it.

3.—Instructions—Instruction Based upon Defendant's Common-law Liability Held Not Erroneous Where Defendant's Instructions Covered Its Defenses under Special Contract. Provisions of contract exempting defendant from its common-law liability, held matter of defense covered by defendant's instructions and there was no error in plaintiffs' instruction based upon defendant's common-law liability as pleaded.

4.—Carriers—In Action for Injury to Animals in Interstate Shipment, Plaintiffs May Plead Carrier's Common-law Liability as Insurer, and Make Prima-facie Case by Proving Delivery to Carrier in Good Condition and Delivery by It in Bad Condition. Even in cases of live animals transported in interstate commerce, plaintiff may plead an action upon carrier's common-law liability as insurer and make out a prima-facie case by proving delivery to carrier in good condition and delivery by carrier in bad condition, the burden then being cast upon carrier to show loss or injury was caused in manner exonerating carrier from liability.

5.—Instructions—Damages—Instructions on Measure of Damages Held Not Erroneous. In action for injuries to animals in transit, an instruction that

(518)

measure of damages was difference between reasonable market value at place of destination, when they should have been delivered there, and such value at point where they were delivered and sold by plaintiffs, less expense in transporting them to destination, **held** not erroneous as deducting cost of transportation from reasonable market value at place where delivered.

6.—**Evidence—Testimony as to Market Value of Live Stock, Not Based on Personal Knowledge, Market Reports or Communications from Dealers, Held Incompetent.** Testimony as to market value of horses and mules at point of destination by witness, who was not there at time they should have arrived, and whose opinion was not based on reading market reports or communications from dealers or others at such place, and had no experience in selling stock on market at said place, **held** incompetent.

7.—**Same—Evidence as to Market Value of Live Stock at Point of Destination by Witness Acquainted with General Market and Market Reports Therefrom, Held Competent.** Evidence of market value of live stock at point of destination by witness who had shipped stock to that market, was acquainted with general market and market reports therefrom, and obtained information through "market quotations" and letters sent out by commission firms from said place, **held** competent.

8.—**Instructions—Instruction on Measure of Damages to Live Stock Not Supported by Evidence, Held Erroneous.** Instruction on measure of damages, **held** erroneous where there was no evidence as to expense incurred in caring for or restoring live stock to good condition, nor as to whether they were reconditioned within reasonable time or shipped as soon as reconditioned or sold in reasonable time after arrival at destination.

9.—**Same—Instruction on Measure of Damages to Animals Sold at Way Point, Held Erroneous as Not Requiring Finding That They Had to be Sold at Said Point by Reason of Injured Condition.** Instruction on measure of damages for injuries to live stock in transit sold at way point, **held** erroneous as not requiring jury to find that animals had to be sold at said place on account of their being so badly injured, their shipment could not be continued, where carrier's evidence tended to show they were not injured to such extent.

10.—**Carriers—Shippers of Live Stock Entitled to Recover Difference Between Sale Price and Market Value of Entire Shipment at Destination in Good Condition, Though Only Part of Animals Were Injured.** Shippers of horses and mules sold at certain point before reshipment to destination, **held** entitled to recover difference between sale price and market value of entire shipment at destination in good condition, in absence of evidence showing such a great number were not injured that plaintiffs' were under necessity of separating shipment and forwarding uninjured animals to destination.

11.—**Instructions—Refusal of Instruction Giving Undue Prominence to Portion of Testimony Held Not Error.** Refusal of instruction giving undue prominence to portion of testimony **held** not error.

12.—**Same—Refusal of Instruction Covered by Other Given Instructions Held Not Error.** Refusal to give instruction fully covered by other given instructions **held** not error.

*Corpus Juris-Cyc References: Carriers, 10CJ, p. 187, n. 78; p. 375, n. 10; p. 379, n. 28; p. 386, n. 45; p. 389, n. 97; p. 391, n. 30; p. 393, n. 56, 59, 60; p. 394, n. 61; p. 396, n. 77; p. 398, n. 2 New. Evidence, 22CJ, p. 701, n. 43, 55. Trial, 38Cyc, p. 1617, n. 34; p. 1676, n. 74; p. 1677, n. 75; p. 1711, n. 19; p. 1784, n. 85, 86, p. 1785, n. 90.

Appeal from Circuit Court of Macon County.—Hon. Vernon L. Drain, Judge.

REVERSED AND REMANDED.

*Lacy & Edwards* for respondents. .

*Ben Franklin & Son* and *Homer Hall* for appellant.

BLAND, J.—This is an action to recover damages for loss sustained by plaintiffs to a carload of animals consisting of fourteen horses and ten mules. There was a verdict and judgment in favor of plaintiffs in the sum of $850 and defendant has appealed.

This is the second appeal in the case. [See Morrow v. Wabash Ry. Co., 265 S. W. 851, where there may be found a statement of the facts involved.] In that appeal we reversed the judgment and remanded the cause for the reason that the court erred in not sustaining defendant's demurrer to the evidence and in giving plaintiff's instruction No. 1 founded upon the theory of common-law liability of the defendant. Our holding was based on the fact that the petition pleaded and the instruction submitted a case founded upon the theory of the carrier's common-law liability as an insurer whereas a special shipping contract was introduced in evidence. by plaintiffs. It was held that by this conduct plaintiffs placed themselves in the position of having declared on one cause of action and proving another. The reversal was also put upon the ground that plaintiffs tried and submitted the case upon the wrong theory as to the measure of damages.

On the present appeal defendant again insists that its demurrer should have been sustained. The facts in the two appeals are substantially the same except defendant's evidence at the last trial tended to show that the animals at Luther and between that point and the National Stock Yards at East St. Louis were handled in a manner consistent with due care on its part, and explaining the transfer of the animals to another car. However, there was no evidence as to what happened to the stock in the switch yards at Moberly. Defendant's evidence on this point merely consisted of a statement by the yardmaster at Moberly that there was no rough handling of the car in the yards there because the cars were customarily handled in a certain way. What happened to this particular load of animals is not shown. From what we said in the former appeal there is no merit in the contention that defendant's demurrer to the evidence should have been sustained on the ground that there was no evidence tending to show that the animals were injured by reason of the negligence of the defendant, thus meeting defendant's evidence tending to show that there was no negligence on its part.

In the last trial plaintiffs did not offer the contract of shipment as they did in the first. This contract, however, is pleaded by the

defendant and plaintiff Morrow on cross-examination admitted that
the contract was executed by plaintiffs and defendant. The con-
tract was introduced in evidence by defendant and it is insisted
that under our holding in the former appeal the court erred in giv-
ing plaintiffs' instruction No. 1 in the first trial. This instruction is
based upon the common-law liability of the defendant as pleaded in
the petition; it does not take into consideration all of the defenses
pleaded in the answer founded upon the contract of shipment. In
the last trial, as in the first, there is an inference from defendant's
evidence that the car was overloaded, which, if true, under the con-
tract of shipment pleaded, exempted defendant from liability if
the injuries were due to this cause. However, at the request of the
defendant the court gave the following instructions—

"The court instructs the jury that if they should find and believe
from the evidence that whatever damage or injury plaintiffs may
have sustained, if any has been proven, was due to and caused by
the inherent vice, weakness, viciousness and natural propensities
and inclinations of said animals being shipped, and by biting, kick-
ing and trampling one upon the other, then your verdict should be
for the defendant.

"The jury are instructed that if they should find and believe from
the evidence that whatever damage or injury the horses and mules
mentioned in the evidence sustained were caused or procured by
the natural propensities and inherent nature of the animals to fight,
bite or injure one another, together with the fact that the car in
which they were being transported was overloaded by plaintiffs'
animals, then the plaintiffs cannot recover and your verdict should
be for the defendant."

The provisions of the special contract governing this shipment
did not supersede the common-law liability of the defendant but
merely constituted a modification of it. It is held that the common-
law liability of the carrier may be modified through any fair, rea-
sonable and just agreement with the shipper which does not include
exemption against the negligence of the carrier or its servants.
[Adams Express Co. v. Croninger, 226 U. S. 491, 509.]   Plaintiffs,
even in the face of the contract of shipment, were entitled to plead
and stand on the common-law liability of the defendant. The pro-
visions of the contract exempting the defendant in part from its
common-law liability were a matter of defense and while plaintiffs
were bound by the reasonable provisions of that contract, there was
no error in plaintiffs' instruction No. 1 in view of the fact that
defendant's instructions covered its defenses based upon the con-
tract.   [State ex rel. v. Hope, 102 Mo. 410; Meily v. Railroad, 215
Mo. 567.]   There can be no question that even in cases of live ani-
mals transported in interstate commerce, plaintiffs may plead an

action upon the carrier's common-law liability as insurer and make out a prima-facie case by proving delivery to the carrier in good condition and delivery by the carrier in bad condition. The burden is then cast upon the carrier to show the loss or injury was caused in some manner that exonerated the carrier from liability. [Hartford Fire Ins. Co. v. Payne, 243 S. W. 357, 359, and cases therein cited.] Our holding in the first appeal was correct but based upon a different situation, as we have pointed out.

At the request of plaintiffs the following instruction was given:

"The court instructs the jury that if your verdict be for plaintiffs, it should be in such an amount as will reasonably compensate the plaintiffs for all pecuniary damage or loss, if any, suffered by the plaintiffs by reason of the injuries, if any, to their live stock, not to exceed $1053.15.

"In estimating the damages, if any, suffered by plaintiffs by reason of the injuries, if any, to the twenty-two head of stock sold at the National Stock Yards, the court instructs you that the measure of damages is the difference, if any, between the reasonable market value of said animals at New Orleans at the time they should have been delivered there by the defendant and the reasonable market value of said animals at East St. Louis at the time they were delivered there and sold by the plaintiffs, less whatever expense would have been incurred in transporting said live stock to New Orleans.

"In estimating the damages, if any, suffered by plaintiffs by reason of injuries, if any, to the two mules sold at New Orleans, the court instructs you that the measure of damages is the difference, if any, between the reasonable market value of said mules at New Orleans at the time they were sold and the reasonable market value of said mules at New Orleans at the time they should have been delivered there in the usual and ordinary course of business; plus whatever expense the plaintiffs incurred in caring for and restoring said mules to a good condition."

Complaint is made of the giving of this instruction. It is insisted that the instruction tells the jury to deduct the cost of transportation of the animals from their reasonable market value at East St. Louis and then ascertain the difference between the resulting sum and the market value at New Orleans when they should have arrived there in good condition thereby allowing a recovery of expenses that would have been incurred in transporting said live stock to New Orleans. We do not think the instruction is susceptible of this criticism. The expense of transportation, under the wording of the instruction, was to be taken from the difference between the value of the animals at New Orleans and their value at East St. Louis.

It is insisted that the instruction is erroneous for the reason that there is no competent testimony as to the market value of the stock

in New  Orleans on the date they should have arrived there, which
was sometime during the latter part of March, nor is there any com-
petent evidence as to the market value of the animals in East St.
Louis at the time they arrived and were sold there. Plaintiffs' tes-
timony tends to show that they were expert dealers in horses and
mules. Plaintiff, Morrow, testified over the objection of the defend-
ant as to the market value of the horses and mules at East St. Louis
without showing that he knew what these values were. Morrow was
not at New Orleans when the stock should have arrived there and
his opinion was not based on the reading of market reports published
in trade journals and newspapers, and while he said he had a repre-
sentative in New Orleans, his opinion was not based on any communi-
cation received from dealers or anyone else at New Orleans, and
there was no evidence that he had any experience in selling stock
upon the New Orleans market. His testimony was incompetent and
the objections thereto should have been sustained. [Fountain v.
Wabash Ry. Co., 114 Mo. App. 676, 681, 682.] Plaintiff France had
been in New Orleans the fore part of March but he did not return
there until the last of April. France had been shipping stock to that
market and was acquainted with the general market and market re-
ports from there. He obtained information through ''market quota-
tions'' from New Orleans. He received reports of the market from
letters sent out by commission firms at New Orleans. We think that
his testimony as to the market value of the stock at New Orleans was
competent. [Fountain v. Railway, supra.]

However, instruction No. 2 is erroneous in several particulars.
There is no evidence as to what expense plaintiffs incurred in caring
for or restoring the mules to a good condition and even if there
had been such evidence, the instruction probably would have been
erroneous in that the allowance for this expense was not limited to
the amount *reasonably necessary* to restore the mules. [Gilwee v.
Pabst Brewing Co., 195 Mo. App. 487, 490.] There was no evidence
upon the question as to whether the two mules that were shipped to
New Orleans were re-conditioned within a reasonable time or whether
they were shipped from East St. Louis as soon as reconditioned or
sold in a reasonable time after they arrived at New Orleans.

The instruction allows the jury to find certain kind of damages
merely by reason of the fact that the animals were injured without
having the jury find that they had to be sold in East St. Louis on ac-
count of their being so badly injured their shipment to New Orleans
could not be continued, while there is some evidence on the part of
the defendant tending to show that they were not injured to this
extent. Of course, there was ample testimony on the part of plain-
tiffs that the animals were so badly injured that they could not be
forwarded to New Orleans, in fact, their evidence shows that the con-

necting carrier would not receive them for further shipment. As we stated in the former opinion, there is evidence that this condition was brought about by the negligence of the defendant. Defendant insists that plaintiffs' evidence shows there was only a part of the animals injured and it contends that the uninjured animals sold in East St. Louis should have been forwarded. However, we do not think that plaintiffs' evidence shows that such a great number were not injured that plaintiffs were under the necessity of separating the shipment so as to send on the uninjured animals to New Orleans. This was not contemplated by the parties when the contract of shipment was made and plaintiffs were entitled to have all of their animals delivered at New Orleans in good condition so as to sell them in one lot if advantageous to do so and not be required to split the shipment into lots. It can readily be seen how the separation of the animals might work to great disadvantage to the shipper in a number of ways. It might cause him to lose money by reason of not being able to sell the entire number as a whole at a price based upon the average of the shipment; they might bring a better price when sold in carload lots than in smaller numbers.

There was no error in the refusal of defendant's instruction No. 4, which gave undue prominence to a portion of the testimony. What was sought to be submitted was fully covered by defendant's given instructions. Complaint is made of the action of the court in refusing other instructions offered by the defendant but no reason is advanced as to why the court erred in this regard, and an examination of the instructions does not disclose that the court erred in refusing them.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.