EMMA JEAN CHRISTNER, RESPONDENT, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.—64 S. W. (2d) 752.

Kansas City Court of Appeals. November 6, 1933.

*Kennard & Gresham* for respondent.

*Luther Burns, Henry S. Conrad, L. E. Durham,* Hale Houts and *I. M. Lee* for appellant.

BLAND, J.—This is a suit for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $2400, and defendant has appealed.

The facts show that plaintiff was injured on September 4, 1932, while driving westwardly in her automobile upon a street in the city of Hutchinson, Kansas, when a northbound train of the defendant struck the car. The automobile had but one seat and plaintiff was on the left-hand side of it. With her were two women companions, Mrs. Dick and Mrs. Meyer. Mrs. Dick was on the seat to the right and Mrs. Meyer in the middle.

Plaintiff testified that the collision occurred about two o'clock in the afternoon of the day in question; that she was traveling at a speed of about fifteen miles per hour; that as she approached the track she looked both ways and when about twenty-five or thirty feet therefrom she saw the train approaching from the south; that it was then about a block or 800 to 1000 feet away; that upon seeing the train she slowed the car down to about ten miles per hour; that she then concluded that she could cross ahead of the train with safety and increased the speed of her car to about twelve miles per hour; that as the front wheels reached the first rail she was traveling about twelve miles per hour.

Plaintiff further testified that when the front wheels of her car reached a point near the track she observed the train and she then realized that it was closer to her than she had thought; that Mrs. Dick urged her to stop and Mrs. Meyer urged her to go ahead; that the witness concluded to go on across the track and in order to increase her speed for that purpose, she pushed the clutch pedal down, changing the car, a Model "T" Ford, from high to low gear and at

the same time stepped on the accelerator; that these operations had the effect of choking and killing the engine and the car came to a dead stop with the front wheels between the two rails and it was there struck by the train; that when she "killed" her engine and the car stopped on the track the train was about 350 to 400 feet away.

Both Mrs. Dick and Mrs. Meyer succeeded in getting out of the car before it was struck, the former getting into the clear but the latter was struck by the car being pushed against her by the train. Mrs. Meyer "got out just about the instant it (the car) was struck." "She just barely got her foot off the running board." Plaintiff did not alight from the car before it was struck by the train.

The engineer testified that he saw the automobile when it was twenty to twenty-five feet from the crossing and at this time his engine was about twenty-five to sixty feet south therefrom; that about this time the car stopped and then started up; that when he saw that it was going upon the track he opened the whistle throttle, applied the brakes and made the best stop that he could; that the engine of his train was about fifteen feet from the car when the latter stopped; that he stopped the train within 240 feet; that the train traveled at a rate of speed of from six to ten miles per hour after the car stopped on the track.

It was agreed by both parties at the trial that the Kansas law, both statutory and as announced in the decisions of the courts of that State, should be considered as the law of the case. Among other defenses pleaded in the answer was the bar of the two-year Statute of Limitations of the State of Kansas. The injury occurred on September 4, 1929, and this suit was not brought until July 6, 1932. No suit was ever brought in the State of Kansas, but a suit was instituted by the plaintiff in this State in the month of February, 1932. That suit was removed to the Federal court where plaintiff took a nonsuit on June 30, 1932, then followed the bringing of the present suit on July 6, 1932.

Plaintiff admits that, by reason of Section 869, Revised Statutes 1929, the two-year Statute of Limitations of the State of Kansas applies to this action, but she claims that the present suit was brought within time on account of the provisions of section 874.

Section 869 provides as follows:

"Whenever a cause of action has been fully barred by the laws of the State, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this State."

Section 874 provides, in part, as follows:

"If any action shall have been commenced within the times respectively prescribed in articles 8 and 9 of this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed

on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed.''

There is a statute in the State of Kansas somewhat similar to our section 874, which tolls the running of the general statute of limitations in that State for one year, under such circumstances. [See Section 60-311, R. S. Kansas, 1923.]

It is claimed by the defendant that this suit is barred by the Kansas general Statute of Limitations. In this connection defendant states its position to be ''that the Kansas two-year Statute of Limitations was not tolled by the former suit and nonsuit in Missouri; that section 60-311 applies only to prior timely actions brought in the State of Kansas, and the similar Missouri tolling statute, Section 874, Revised Statutes Missouri, 1929, has no application to the Kansas Statute of Limitations and is not effective to toll the Kansas Statute of Limitations or permit suit in Missouri upon a Kansas cause of action barred in Kansas and, therefore, barred in Missouri under section 986, Revised Statutes Missouri, 1929.''

In reference to section 869 the Supreme Court said in Farthing v. Sams, 296 Mo. 442, 451:

''Undoubtedly the weight of authority is to the effect that Section 1324 (now 869) imposes additional limitation upon the right to sue and does not enlarge the right to sue beyond the limitation of our own statute. By its very terms it effects only the remedy. That is, where the remedy is denied the suitor in the state where his cause of action arose, it is denied to him here. If it is not denied to him in the state where the cause arose it may be denied to him here by our Statute of Limitations.''

The general rule is that the Statute of Limitations has no extra territorial effect but that the law of the forum governing limitations applies. Section 869, strictly speaking, does not change this rule but, in effect, makes the Statutes of Limitations of Kansas the law of Missouri by providing that the Statute of Limitations of the state where the cause of action accrued shall govern to the extent mentioned in the Farthing case. Thus it will be seen that, in effect, a special Statute of Limitations is provided for in section 869, applicable only to causes of action arising in foreign states. In other words, section 869 does not make the Statute of Limitations of a foreign state that to be applied in this State, but makes that statute the statute of Missouri. This is, perhaps, a somewhat technical construction of the effect of section 869, but it has a bearing upon the controversy now before us. We say this for the reason, that if, after all, it is the Missouri Statute of Limitations that we are applying, though it be the period which the foreign state prescribes for its running, then it would appear that when jurisdiction once attaches in our State section 874 becomes applicable. When jurisdiction of the courts of

this State attaches the rules of procedure are those of the forum and not that of the foreign state where the cause of action arose. Consequently, our courts must necessarily ascertain the rights of the parties under our own statute in accordance with our own laws and procedure and not in accordance with those of the foreign state involved.

We find that section 869 is included in the provisions of Article 9, Chapter 5, Revised Statutes 1929. We also find section 874 to be included in the same article and chapter. Section 874 specifically provides that "if any action shall have been commenced within the times respectively prescribed in section 8 and 9 of this chapter and the plaintiff suffered a nonsuit . . . such plaintiff may commence a new action from time to time within one year after such nonsuit suffered." Section 869, in effect, makes the general Statute of Limitations of the State of Kansas the statute of Missouri for a cause of action arising in the State of Kansas and section 874, by said reference to article 9, chapter·5, makes the latter section applicable to a cause of action mentioned in section 869 as originating in another state, territory or country.

Our theory of the applicability of section 874 is upheld in Wright v. N. Y. Underwriters' Ins. Co., 1 Fed. Sup., p. 663, and in Knight v. Ry. Co., 160 Iowa, 160. The case of McCoy v. Railroad, 134 Mo. App. 622, decided by this court, insofar as it is inconsistent with our present holding, is overruled.

It is insisted that defendant's instruction in the nature of a demurrer to the evidence should have been given. The cause was submitted by the plaintiff upon the last chance doctrine of the State of Kansas, which is somewhat different from the Missouri humanitarian doctrine. Recognizing this, the instruction submits that the duty to plaintiff on the part of the operator of the train first arose after the automobile stopped upon the track and she was unable to extricate herself from the danger.

Defendant admits that, if the testimony of plaintiff and her witness, Mrs. Dick, who testified that the train was 350 to 400 feet distant when the car stopped upon the track, is worthy of belief, then a case of negligence was made, under the Kansas last chance doctrine, as to the operator of the train in failing to stop it before the collision. But it is insisted that the testimony of these witnesses in this regard "is to be disregarded as contrary to the facts and a mere guess without probative value."

The attack upon the testimony of these witnesses is based upon the fact that they testified that the train was 800 to 1000 feet away when the automobile in which plaintiff was seated was twenty-five or thirty feet from the track (Mrs. Dick said twenty feet therefrom) and from 350 to 400 feet away when the automobile became stalled on the track. The car was being driven at a rate of speed of about ten or twelve

miles per hour. Mrs. Dick was unable to give the speed of the train, but plaintiff testified that when she first saw it it was going at the rate of twenty to thirty miles per hour and when the car became stalled on the track the train was going at the same rate of speed.

Plaintiff admits that if the speeds of the automobile and the train were such as testified to by her at the trial, the latter could not have been 800 to 1000 feet away, when her car was twenty-five to thirty feet from the track, and have arrived at a point 350 to 400 feet from the place of the collision when the car reached the place where it stopped. But plaintiff insists that it was within the province of the jury to say that she and her witness, Mrs. Dick, were mistaken in the first instance and not in the latter.

There are some facts corroborating the testimony of plaintiff and Mrs. Dick that the train was about a half block or 350 to 400 feet away when the car became stalled on the track and plaintiff heard the train whistle. Mr. Preston, one of defendant's witnesses, testified that he heard the train whistle when it was a half block away from the car. There was evidence that there was sufficient time, after the car stopped on the track, for two of the women to get the door of the car open and out of the car. Mrs. Dick reached a point ''back quite aways'' out of danger and Mrs. Meyer was out of the car and on to the pavement before the engine struck the car. This required several seconds of time. At least, the jury could so find. Of course, none of the witnesses attempted to make any definite statements as to distances and speeds. Under the very nature of the circumstances surrounding a collision of this kind, none of the witnesses was in a position to give absolute accurate testimony upon such subjects and their testimony must be considered as mere estimates. It was within the province of the jury to conclude that plaintiff's and Mrs. Dick's testimony, as to the train being 350 to 400 feet away at the time the car stalled on the track, was approximately correct and that they were mistaken in saying that the automobile was only twenty to twenty-five feet from the crossing when the train was 800 to 1000 feet therefrom, and that plaintiff was also mistaken as to the speed and conclude that the train was approaching at the rate of speed of six to ten miles per hour, or as testified to by the engineer. There was no admissions made on the part of plaintiff in her testimony in reference to speeds and distances that can be held to be conclusive on her, as a matter of law. [Haddow v. St. L. P. S. Co., 38 S. W. (2d) 284.] We think that the demurrer to the evidence was properly overruled.

Complaint is made of the giving of plaintiff's instruction No. 1, which covers the entire case and directs a verdict. This instruction, among other things, tells the jury that if they found that plaintiff's automobile had stopped upon the track and that plaintiff was in an inextricable position and that the persons in charge of the train saw, or could have seen, plaintiff's position of peril and could, thereafter,

by the exercise of ordinary care, *"have stopped said train, or slackened* the speed thereof in time to have allowed plaintiff to extricate herself from said position, if you so find, and if you further find that defendant negligently *failed to do all of said things,"* and that as a result thereof plaintiff was injured, the verdict should be for the plaintiff, even though they believed that she was negligent in going upon the tracks.

It is insisted by the defendant that the matter of stopping and slackening the speed of the train is submitted in the alternative, and that there is no evidence that the slackening of the speed thereof would have given plaintiff time to have gotten out of the car, and to a place of safety upon the ground. We think defendant's contention must be sustained.

As before stated, plaintiff's testimony tends to show that the train was from 350 to 400 feet from the crossing at the time the car became stalled thereon and, as the undisputed testimony shows that the train stopped 240 feet after the engineer started its stopping, there is no question but that the matter of stopping the train was properly submitted to the jury. Aside from this, the engineer testified that he was going at the rate of speed of six to ten miles per hour and that going at six miles per hour he could have stopped within 100 feet. Of course, in order for the train to have been stopped its speed must have been first slackened and in that sense slackening is included within the act of stopping the train. But that is not what is meant by the instruction. The instruction, in effect, tells the jury that even though they find that there was not time in which to stop the train after the car became stalled upon the tracks, yet, if the engineer could have slackened its speed sufficiently to have permitted plaintiff to escape, he was guilty of negligence, and the verdict should be for the plaintiff.

If the jury found that the train could not have been stopped but attempted to arrive at some conclusion as to whether it could have been slackened in time to have permitted plaintiff to escape, it must have rejected the testimony that the train was from 350 to 400 feet from the crossing at the time the car became stalled thereon, as if it was that far away admittedly, it could have been stopped and there was no issue concerning the slackening its speed. Rejecting the evidence that the train was from 350 to 400 feet from the crossing at the time in question the evidence, taken in its most favorable light to plaintiff, would place it 100 feet from the crossing. There is no evidence that it was between these points at the time in question and there is no expert testimony concerning the degree of slowing up of the train that was possible, short of stopping it, in that space.

Plaintiff's testimony is very unsatisfactory as to what she did or attempted to do after her car became stalled upon the track and she first realized the proximity of the train. At one place in her testi-

mony she said: "Of course then I tried to get out as soon as I could, and I didn't have a bit of time. If I had had a few more seconds, I would have gotten out of the way myself." "I was thinking about getting the car off, and I didn't have time to do that. It was just a few seconds to do anything in; the train was coming so fast and close that I had to wait for the other girl to get out on the other side, because I would not have tried getting out on this side; the train was coming on down too close, and I could not get out until the other girls were out."

"Q. Were you making any effort to start the car again? A. Yes, I was trying to start the car as the girls were getting out.

"Q. It had a starter, a self-starter, did it? A. Yes.

"Q. How was that worked, with your foot? A. A foot starter on it, yes.

"Q. Well, you were trying to start the car after it went dead, and you killed the engine on the track? A. I thought about starting it, but I didn't even have time.

"Q. Then you didn't try to start it again because you say you had no time? A. I didn't have time to start it again.

"Q. Now, the reason you didn't have time was because the train was so close on you? A. So close, yes.

"Q. So you really had no time to do anything? A. No, not after my car stopped, I didn't.

"Q. You had no time for anything? A. No."

In rebuttal plaintiff testified:

"Q. I believe also you said that at no time after the car was stopped did you make any effort to start the car again, that is, get the engine running and going ahead? A. I didn't have time.

"Q. You didn't have time—why? A. I was thinking about getting out."

. . . . . .

"As soon as the other girls got out, that was just a few seconds. All of that time they were getting out. It just took a few seconds, and of course I was trying to get out after they did; to get out as soon as they got out, the first chance I got."

Mrs. Dick testified that Mrs. Meyer got out of the car just about the instant it was struck by the train; that at the time of the collision plaintiff was trying to get out, "well, she must have been facing north, because the way it hit her back;" that she saw her trying to get out; that she (plaintiff) was not sitting behind the wheel; "Well, she had just—she was partly standing up, I guess, trying to get out as soon as Mrs. Meyer did."

"Q. Well, as you saw it there; if Mrs. Meyer had not been in there, why, would she have probably gotten out? A. Yes, if she had not been there, she would have had a little more time to get out. She

would have got out about the time Mrs. Meyer did. There would only have been the two of us.''

Plaintiff did not at any time testify that she was standing and Mrs. Dick's testimony that she ''guessed'' plaintiff was standing, cannot be taken as evidence of that fact, even in this court, for the reason that guesses are rejected as wholly without probative force, unless it sufficiently appears that the term is used to express an opinion or judgment. [Hunter v. Helsley, 98 Mo. App. 616, 622.]

While, it is apparent that Mrs. Dick saw plaintiff after the witness alighted from the car, she, no doubt, by reason of excitement or confusion, did not know the exact position of plaintiff, because the witness testified that she arrived at the conclusion that plaintiff was facing north ''because the way it hit her back,'' and when the witness said that plaintiff was partly standing up, she merely ''guessed'' that, showing that she had no knowledge of the exact position of plaintiff, but was merely speculating.

Defendant would have us take the testimony of plaintiff in reference to what she was doing after she saw the train, in its most unfavorable light to her. Of course, should we take her evidence in this light we would be compelled to conclude that she was not attempting to alight from the car. In other words, we would find that she was trying to get the car on across the track. Defendant attempts to apply the rule that an admission of a party in the progress of a trial must be taken as conclusive on her, in the absence of some explanation as to why the admission was made. We need not pass upon this question, but assuming that the jury could consider plaintiff's testimony in its *most favorable* light to her, that is, that she had in mind the matter of alighting from the car instead of driving it on across the tracks, there is no substantial evidence that she had done anything (except mentally) toward getting out of the car at the time the train struck it, because, using her own language, she did not ''have a bit of time.''

It will be remembered that Mrs. Meyer had alighted an instant before the train struck the car and that she was injured by the car being pushed against her. In order for the jury to find that the engineer negligently failed to slacken the speed of the train sufficiently to permit plaintiff to escape, it was required to arrive at the conclusion that such an act upon the part of the engineer would have given plaintiff time, not only to have alighted from the same side of the car that the other ladies alighted from (as plaintiff testified that she would not have alighted from the side next to the approaching train) but, in addition, to have given her time to have gotten out of the danger of the automobile being pushed against her even after she had alighted from it. To have instructed the jury that they might find, under all of the circumstances, that the train could have been sufficiently slackened, within a space of 100 feet, to have permitted

plaintiff to have escaped, was allowing them to indulge in mere speculation, which a jury is not permitted to do. [Allen v. Hickman, 53 S. W. (2d) 283, 287; Cervillo v. Manhattan Oil Co., 226 Mo. App. 1090; Caylor v. Ry. Co., 59 S. W. (2d) 661.]

However, it is contended by the plaintiff that the instruction does not submit the matter of stopping and slackening the speed of the train in the alternative. We think there is no merit in this contention. It certainly does so in the first clause which we have quoted from the instruction. Because the instruction further on tells the jury that if defendant "failed to do all of said things," plaintiff says that they were required to find that defendant not only had time to stop the train, but to slacken the speed thereof, pointing out that the instruction does not say "if you find that defendant negligently failed to do *any one* of said things," but says, "*all* of said things." It is difficult to see why the word "slacken" was included in the things defendant might have done, had it been plaintiff's intention to submit only the matter of stopping the train. There was at least another requirement mentioned in the instruction before the use of the words "failed to do all of said things." This other requirement was that the employees of defendant in charge of the train exercise ordinary care to see plaintiff in a position of peril and, the words "failed to do all of said things" might refer to other things required to be done by the servants of the defendant, as well as stopping or slackening the speed of the train. There is grave doubt in our mind but that the jury would have considered the instruction as submitting the matter of stopping or slackening the speed of the train in the alternative and the instruction, to say the least, is ambiguous and confusing on the point. It is well settled that an ambiguous and confusing instruction is erroneous. [Am. Vet. Lab. v. Glidden, 59 S. W. (2d) 53.]

On account of the giving of plaintiff's instruction No. 1, the judgment is reversed and the cause remanded. *Shain, P. J.,* concurs; *Trimble, J.,* concurs in result.