ALROPA CORPORATION, A CORPORATION, APPELLANT v. HARRY MARVIN SMITH RESPONDENT.—199 S. W. 2d, 866.

Kansas City Court of Appeals.   Opinion delivered February 7, 1947.

*Granoff & Meyerhardt, Maurice Weinberger,* for appellant.

*William A Kitchen* for respondent.

BLAND, P. J.—This is an action in two counts, begun on May 4, 1938. It is based on 6 notes, and two mortgages securing the same on Florida real estate, executed in Florida by the defendant and his wife, Ray Morse Smith, to Okeechobee Company, and assigned to plaintiff. During the pendency of the action defendant's wife died and the case was dismissed as to her.

At the conclusion of the evidence the court sustained plaintiff's motion for a directed verdict on each count for the principal amount of the last maturing note sued upon therein, together with the unpaid interest thereon. Plaintiff did not ask for a verdict for the amount of the first two maturing notes. This resulted in a verdict and judgment in favor of plaintiff in the sum of $2298.55 on the first count

and $598.15 on the second count. Thereafter, defendant's motion for a new trial was sustained, and plaintiff has appealed.

The first count involves a mortgage and three notes executed by the defendant, Smith, and his wife, on June 11, 1925 to Okeechobee Company for $887.50 each. These notes matured, respectively, one, two and three years .after date. The second count involves a mortgage and three notes, in the sum of $231.25 each, executed on June 16, 1925, and due, respectively, one, two and three years after date. The notes and mortgages were assigned to plaintiff on October 20, 1937. The mortgages recited that the mortgagors conveyed a fee simple title in the property. They were never foreclosed.

Defendant's amended answer consists of an unverified general denial, followed by a plea of the Missouri statute of limitations and the five-year Florida statute of imitations dealing with unsealed instruments. The answer also alleges that, after the execution of the notes and mortgages, the defendant and his wife learned that the property was swamp land and they refused to make payments on the mortgages and notes; "that after said refusal the Okeechobee Company did on or about July 8, 1927 in writing relieve this defendant herein of any further responsibility upon the mortgages and notes herein sued on in exchange for the return of the property and the deeds .to said property. That said offer was fully executed on the part of said defendant, but the defendant states that after the maturity of said notes herein sued on, the said Okeechobee Company did fraudulently and in violation of its written agreement fail to return to defendant said mortgage and notes herein sued on but fraudulently conveyed the same to the plaintiff herein."

In its reply plaintiff denied all of the new matters set up in the answer and alleged that the Florida twenty-year statue of limitations, dealing with instruments under seal, applied to the facts in this case.

The evidence shows that each of the notes and mortgages was given as a part of the purchase price of a lot upon which the mortgage was executed; that at the time of their execution defendant and his wife were in Florida; that in October 1926 defendant returned to Kansas City; that his wife remained in Florida for about a year thereafter, when she also returned to Kansas City. The purchase of the lots and all dealings had with the Okeechobee Company were by defendant's wife, alone. After defendant returned to Kansas City his wife received, in Florida, two letters from the Okeechobee Company addressed to him. The first of these letters, dated May 31, 1927, called the attention of the defendant to the fact that, on June 16 of that year, there would be due interest in the amount of $83.25. This interest payment was upon the notes covered by the second count in suit. It also stated that the principal of two of

said notes would become due on said date and that the payment of the principal of the notes would be extended if the interest and the taxes were paid by the defendant; but if defendant desired to make no further payments "we will relieve you of further responsibility by turning back to you your mortgage and notes in exchange for a deed returning the property to us".

The second letter was dated July 8, 1927, and stated that no reply had been made to the first letter and restating what was said in the first letter, including the offer to return the mortgage and notes mentioned in the first count of the petition in exchange for a deed returning the property to it.

The deposition of defendant's wife was introduced in evidence. She testified, in effect, that when she received these letters she, sometime prior to the month of September 1927, not only returned the deed to the property mentioned in the first count to the Okeechobee Company but, also, mailed to it the deed to the property covered by the mortgage mentioned in the second count. She further testified that she did not send a deed conveying back the title but merely the deeds received from the company to herself and the defendant; that, thereafter, nothing was ever heard from the Okeechobee Company about the matter. Defendant testified that he, likewise, had never heard anything further from that company. The evidence shows that plaintiff made no demand for the payment of the indebtedness prior to the filing of this suit.

Defendant's wife further testified: "Q. Do you mean that you executed a deed conveying title back? A. I did not. I was so illegal, I didn't do that. .I just sent them (the deeds) back with the understanding that they were doing it".

Plaintiff insists that the court erred in sustaining defendant's motion for a new trial; that the action was not barred by the statute of limitations. The instruments are under seal according to the law of Florida. (See Cracowaner, et al., v. Carlton National Bank, 124 So. 275.) Section 95.11 (Fla. Statutes 1941) provides: "Limitations upon actions other than real actions.- - - Actions other than those for the recovery of real property can only be commenced as follows: (1) WITHIN TWENTY YEARS. - - - An action upon a judgment or decree of a court of record in the State of Florida, and an action upon any contract, obligation, or liability founded upon an instrument of writing *under seal.* (2) * * * (3) WITHIN FIVE YEARS. - - - An action upon any contract, obligation or liability founded upon an instrument of writing *not under seal*". (Italics ours.)

Section 95.07 provides: "Limitation, absence of defendant from state. - - - If, when the cause of action shall accrue against a person, he is out of the state, the action may be commenced within the term herein limited after his return to the state; and if after

the cause of action shall have accrued he depart from the state, the time of his absence shall not be part of the time limited for the commencement of the action.''

Section 3344 R. S. Mo. 1939, provides: ''Private seals abolished. The use of private seals in written contracts, conveyances of real estate and all other instruments of writing heretofore required by law to be sealed (except the seals of corporations), is hereby abolished, but the addition of a private seal to any such instrument shall not in any manner affect its force, validity or character, or in any way change the construction thereof''.

Section 1012 R. S. Mo. 1939, provides: ''Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued.  *  *  *  ''

Section 1013 R. S. Mo. 1939, provides: ''What actions shall be commenced within ten years. Within ten years: First, an action upon any writing, whether sealed or unsealed, for the payment of money or property''.

Section 1021 R. S. Mo. 1939, provides: ''Limitations on actions originating in other states. Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state''. This section is known as a ''borrowing'' statute. Section 1023 R. S. Mo. 1939, provides: ''If at any time when any cause of action herein specified accrues against any person who is a resident of this state, and he is absent therefrom, such action may be commenced within the times herein respectively limited, after the return of such person into the state''.

The general rule is that all matters relating to the remedy, which includes the application of statutes of limitations, are determined by the law of the forum, while the nature, validity and interpretation of contracts are determined by the law of the country where the contract is made or to be performed. (12 C. J. pp. 449, 483, 484, 485; 37 C. J. pp. 729, 730, 331.)

In referring to such statutes as section 1021, it is stated: ''In ascertaining the effect of the bar of the foreign statutes, courts of the forum will construe the statutes of the other state as construed by its courts and follow the rules of law of the other state as to when a cause of action accrues, when an action is deemed commenced, and as to other matters of law, local to the other state, affecting questions which relate to the limitation of actions in that state''. (11 Am. Juris. p. 514.)

Section 1021 R. S. Mo. 1939 (our borrowing statute) does not change the rule that a statute of limitations has no extra-territorial effect, but it, in effect, makes the statute of limitations of the state

where the cause of action accrued, a statute of limitations of this state and, in effect, a special statute of limitations applicable to causes of action arising in foreign states. Section 1021 does not enlarge the right to sue beyond the limitations in the statutes of our own state and if the remedy is not denied in the state where the cause of action arose, it may be denied to him in this state by our statute of limitations. (Farthing v. Sams, 247 S. W. 111, 113; Christner v. C. R. I. & P. R. R., 64 S. W. (2d) 752; Turner v. Mo. Ks. Tex R. Co., 142 S. W. (2nd) 455.)

This action having been brought less than 10 years prior to the expiration of the due date of the two notes in controversy, the suit is not barred by section 1013 of our statute. The question is, whether it is barred by the Florida statute. Defendant relies upon paragraph 3 of section 95.11 of the Florida statutes, for the reason, as he states, that although the instruments sued upon are regarded in Florida as instruments under seal, in this state, in view of section 3344, they are to be regarded simply as instruments of writing not under seal and, therefore, the five-year statute of limitations of Florida (relating to instruments not under seal) applies for the reason that the nature of the instruments for the purpose of applying the statutes of limitations should be determined by the laws of the forum. There are authorities holding that the law of the forum will be applied to determine whether the instruments involved are sealed instruments. (See 109 A. L. R. p. 479.) These authorities involve cases where the courts of the forum and those of the *lex fori contractus* entertain different views as to what is an instrument under seal. In other words these authorities involve a pure question of conflict of laws. None of them deal with borrowing statutes. Section 1021 R. S. Mo. 1939, makes the foreign applicable statute of limitations a statute of limitations in this state. Sealed instruments are not made unlawful by section 3344 R. S. Mo. 1939 but are merely made ineffective. Sealed instruments are recognized in Florida and in determining whether or not this action is barred by the statutes of limitations of the State of Florida, we will apply the statute of that state relating to sealed instruments as a part of the statute of limitations of that state. (Brown v. Grinstead, 252 S. W. 973.) Any other holding might result in barring an action brought in this state which would neither be barred in Florida nor in this state under our own general statute of limitations, and such would be the result in this case if we applied the five-year statute of Florida, as defendant would have us.

Section 1021 provides: "*Whenever a cause of action has been fully barred by the laws of the state * * * in which it originated,* said bar shall be a complete defense to any action thereon, brought in any of the courts of this state". Finding that this cause

of action would not be barred in Florida we conclude that it is not barred in this state.

Defendant cites Alropa Corp. v. Kirchwehm, 33 N. E. (Ohio) 655. This case is well described in 149 A. L. R. p. 1235, as follows: "The cause of action arose in Florida and the action was against a grantee to recover the amount of a deficiency on a Florida mortgage foreclosure, it was held that the Ohio statute, providing that in case the laws of the state where the cause of action arose limit the time for commencement of the action to a less number of years than do the statutes of Ohio 'in like causes of action' then 'said cause of action' should be barred in Ohio at the expiration of the lesser number of years, had the effect of barring the action in five years, five years being the period prescribed in Florida for the bringing of action upon a simple contract in writing, and the obligation of the defendant being such as in Ohio is regarded as a simple contract in writing. Such was the ruling notwithstanding in Florida the obligation would have been construed as one under seal, to which a limitation of twenty years would apply, and notwithstanding the further fact that, in general, the statutes of Ohio with reference to actions on simple contracts in writing allowed fifteen years to bring suit. It will be seen that the effect of this decision was that the action was barred in five years because a Florida contract was in suit, even though had the contract been made in Ohio a period of fifteen years would have been allowed, and in Florida twenty years would have been allowed for suit on the very contract. The suit thereby became barred in Ohio fifteen years before it was barred in Florida. This strange result is attributable to the fact that the law of the forum was regarded as controlling in the determination of the preliminary question as to the character of the obligation, and is also attributable to the literal effect given to the words 'in like causes of action', appearing in the Ohio statute".

After a recitation of the above facts in connection with the Kirchwehm case the annotator makes a severe criticism of the decision and points out that the case is bottomed upon cases referred to in 109 A. L. R., cited by us, supra, which do not involve the construction of borrowing statutes. However, it will be noted that the Ohio statute is not worded as in ours. So we will leave it to the courts of Ohio to construe its own statute, with the observation that we are gratified that no such incongruity can result from a construction of our statute such as appears by the decision in the Kirchwehm case.

Defendant also cites Alropa Corp. v. Kirchwehm, 36 N. E. (Ohio) 511. This case follows the first Kirchwehm case cited and is based thereon.

However, if it could be said that the Florida five-year statute of limitations applies to the facts in this case, the action is not barred in view of the provisions of section 95.07 of the Florida statute, as

defendant was out of that state after he returned to Kansas City in October 1926. No doubt if 10 years had elapsed after defendant returned and remained in this state prior to the time of the bringing in this state of this cause of action, the suit would be barred under section 1013 of our statute, as it provides a shorter time for the running of the limitation than the Florida statute (section 95.07). (See Farthing v. Sams, supra; Christner v. Chi. R. I. & P. Ry. Co., supra.) However, that period of time (10 years) has not elapsed and if the Florida five-year statute of limitations be applicable it was tolled by section 95.07 of the Florida statute by reason of the absence of the defendant from the state of Florida from and after the month of October 1926. (See Lillard v. Lierley, 202 S. W. 1057; Daniels v. Gallagher, 189 S. W. 644.)

However, it is insisted by the defendant that whether the retention by the Okeechobee Company of the deeds returned by defendant's wife to it constituted a release of the notes and mortgage presented a question of fact for the jury. Plaintiff insists that it did not; that the evidence does not support the allegation in the answer relative to this matter.

In defendant's answer it is alleged that the Okeechobee Company on or about July 8, 1927, in writing, relieved defendants of any further responsibility upon the mortgages and notes "in exchange for the return of the property and the deeds to said property", and that the offer was accepted by the defendants. Plaintiff says that the return of the deeds to the property did not constitute a reconveyance of the title to the company. The evidence shows that the deeds to the property were returned and the act of the Okeechobee Company in retaining them tends to show that it considered such return as the return of the property. "Where a party, even without right, claims to rescind a contract, if the other party agrees to the rescission or does not object thereto and permits it to be rescinded, the rescission is by mutual consent. So a contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other." (13 C. J. p. 601; 17 C. J. S. 881, 882; Warren v. N. Y. Life Ins. Co., 58 Pac. (2nd) (N. M.) 1175, 1180; Ralya v. Atkins, 61 N. E. (Ind.) 726, 729; Hobbs, et al., v. Columbia Falls Brick Company, 31 N. E. (Mass.) 756.)

The fact that the Okeechobee Company retained the deeds for so long a time is potent evidence that it considered the property returned and the matter closed. While the general rule is that a subsequent redelivery to the grantor of a deed which has been executed and delivered will not revest the title in the grantor, notwithstanding an agreement between the parties, (18 C. J. pp. 407, 408) the grantee may be estopped by the destruction or the return of the deed from claiming that title has not, in effect, been returned. (See on this point Potter v. Adams, 125 Mo. 118; Winfrey v. Gallatin,

72 Mo. App. 191, 195; Peterson v. Carson, 48 S. W. (Tenn.) 383; Mussey v. Holt, 55 Am. Dec. (N. H.) 234.)

We think that there was ample evidence on the question of the return of the property to make an issue for the jury in relation to the notes and mortgages sued on in the *second count*. The letters of the Okeechobee Company to the defendant dated May 31st and July 8th, 1927 relate solely to the instruments mentioned in that count. As to whether there is sufficient evidence to go to the jury as to the instruments covered in the first count, we need not say, for the reason that the answer is based solely on the written offer made by the Okeechobee Company on July 8th, 1927.

The order of the trial court granting a new trial to the defendant is sustained insofar as it relates to count two. However, as to count one it is reversed as, from what we have said, the court properly directed a verdict in favor of plaintiff as to this count. There was no defense pleaded in relation thereto as regards the question of rescission and the statute of limitations is unavailable.

All concur.