**Hugh DEVINE, Plaintiff-Respondent,**

v.

**D. C. ROOK, Defendant-Appellant.**

**No. 7692.**

Springfield Court of Appeals.

Missouri.

June 16, 1958.

Max Patten, Joplin, for defendant-appellant.

Jack Fleischaker, Joplin, Douglas G. Hudson, Fort Scott, Kan., for plaintiff-respondent.

RUARK, Judge.

This case involves a Kansas statute of limitations which has been borrowed by Missouri.

Plaintiff, now respondent, sued to charge defendant, now appellant, with what the petition describes as a common law liability in tort of a common carrier on account of injury and damage to a herd of dairy cattle which defendant undertook to transport, by tractor-trailer, from near Neosho, Missouri, to Osawatomi, Kansas. The alleged injuries to the cattle occurred in Kansas, and point of destination of shipment was in Kansas.[1] Plaintiff is a resident of Kansas. At the time of the occurrence defendant was, and still is, a resident of Missouri, but he has been in the state of Kansas since then on occasional trips. The alleged injury occurred on August 2, 1951, and the suit was filed on May 3, 1956. Hence the regular Missouri five-year statute of limitations [Section 516.120(4), RSMo 1949, V.A.M.S.] does not bar it.

Defendant pleaded the Kansas two-year statute [1949 Kan.G.S. 60–306(3)], which is the regular statute limiting actions on injuries to personal property and injuries to the rights of another not arising on contract. The application of this statute arises because of the Missouri "borrowing" statute, Section 516.180 RSMo 1949, V.A.M.S., which provides, "Whenever a cause of action has been fully barred by the laws of the state * * * in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state."

To counter this, plaintiff pleaded and relies upon the Kansas tolling statute (Kan.G.S. 60–309), which provides, among other things, "If when a cause of action accrues against a person he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if after the cause of action accrues he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the

1. Merritt Creamery Co. v. Atchison, T. & S. F. Ry. Co., 128 Mo.App. 420, 107 S.W. 462.

period within which the action must be brought * * *."

The principal issue here is whether, when we borrow the Kansas two-year statute, we take along with it the Kansas tolling statute, or whether we take the two-year statute alone and uninhibited by such tolling statute.

■ It is fundamental that the law of the place where the cause of action first came to life controls the substantive law of the cause, since the cause owes its existence, and the character of its existence, to that place. But in respect to the *enforcement* of that cause, the state which lends its courts and its processes to that purpose has the right to say how and when those processes may be used. Hence the law of the forum controls in respect to limitations.[2]

■ The effect of the borrowing statutes is not to extend the procedural law of one state into another, but the borrowing state adopts and makes as its own (special statute of limitations) the statute of the other.[3]

■ But when such statute is so borrowed, it is not wrenched bodily out of its own setting, but taken along with it are the court decisions of its own state which interpret and apply it, and the

companion statutes which limit and restrict its operation.[4] This we think is the general law. "The later cases indicate, as do the earlier ones, that, in general, an action will not by force of a 'borrowing' statute be barred where the fact is that action would not be barred in the sister state in view of the statutory tolling provisions which would there be called into operation." Annotation 149 A.L.R. p. 1232. And this is the law of Missouri.[5]

Such holding, however, is not universal. The defendant cites Ohio cases[6] which, *if we understand them,* hold to the contrary. These holdings have received severe criticism. The writer at Annotation 149 A. L.R. 1235, refers to the "peculiar results" they obtained. Our own Kansas City Court of Appeals in Alropa Corp. v. Smith, 240 Mo.App. 376, 199 S.W.2d 866, 870, indicates polite scorn of the Ohio theory by referring to it as a "strange result." This court concludes, "However, it will be noted that the Ohio statute is not worded as is ours. So we will leave it to the courts of Ohio to construe its own statute, with the observation that we are gratified that no such incongruity can result from a construction of our statute such as appears by the decision in the Kirchwehm case."

■ We think[7] Kansas 60–309 effectively prevented the operation of the two-

2. 15 C.J.S. Conflict of Laws § 22e, p. 953; Wood on Limitations, 4th Ed., vol. 1, sec. 8, p. 32; Morgan v. Metropolitan Street Ry. Co., 51 Mo.App. 523; Hurley v. Missouri Pac. Ry. Co., 57 Mo.App. 675.

3. 53 C.J.S. Limitations of Actions § 31, p. 976, et seq.; Jenkins v. Thompson, Mo., 251 S.W.2d 325; Brown v. Westport Finance Co., D.C.W.D.Mo., 145 F.Supp. 265; Christner v. Chicago, R. I. & P. Ry. Co., 228 Mo.App. 220, 64 S.W.2d 752; see Brown v. Grinstead, 212 Mo. App. 533, 252 S.W. 973.

4. 53 C.J.S. Limitations of Actions § 31, p. 979; Alropa Corp. v. Smith, 240 Mo. App. 376, 199 S.W.2d 866; Morgan v. Metropolitan Street Ry. Co., 51 Mo.App.

523; Wojtylak v. Kansas & Texas Coal Co., 188 Mo. 260, 87 S.W. 506(13).

5. Alropa Corp. v. Smith, 240 Mo.App. 376, 199 S.W.2d 866; see Guilbert v. Kessinger, 173 Mo.App. 680, 160 S.W. 17, loc. cit. 24; see Daniels v. Gallagher, Mo. App., 189 S.W. 644.

6. Bowers v. Holabird, 51 Ohio App. 413, 1 N.E.2d 326; Alropa Corp. v. Kirchwehm, 138 Ohio St. 30, 33 N.E.2d 655; Payne v. Kirchwehm, 141 Ohio St. 422, 48 N.E.2d 224, 149 A.L.R. 1217.

7. If Kansas G.S. 60–306 applied to the cause of action against a nonresident at all. See Stanley v. Wickam, 112 Kan. 628, 211 P. 1117; Perry v. Robertson, 93 Kan. 703, 150 P. 223.

year statute of limitations.[8] That statute, it will be noted, operates upon the *personal presence* of the defendant, and residence or domicile as such has no effect upon its operation.[9] Occasional trips into the state will not serve to prevent its operation and keep the limitation running, at least not for any longer than the aggregate presence of the defendant within the jurisdiction.[10] We conclude that the plaintiff's cause of action was not "fully barred" by the Kansas statute of limitations and hence was not barred by the Missouri borrowing statute.[11]

Appellant contends that the amount of verdict and judgment ($1200) was based on pure speculation; that there was no evidence from which the amount of damages could be found.

Plaintiff delivered to defendant twenty-one "high class" dairy cows, most of them "heavy with calf" and weighing eight to nine hundred pounds, also six Holstein heifers weighing five to six hundred pounds. He had recently purchased and paid for this herd a total of $5,610. The value of these animals, at point of destination, before the abuse and injury to them which is complained of, ranged (depending upon the various witnesses) from a top of $280 to a low of $260 (each) for the dairy cows, and from a top of $180 to a low of $150 for the heifers.

Plaintiff's evidence showed that damage occurred principally because of two instances during the trip in which defendant's vehicle failed to negotiate the tops of hills, went backward, and "jack-knifed"

with the rear end of the trailer in the ditch. In both such accidents the cattle were all thrown into the rear and piled one upon the other and were "wedged in there just like sardines in the can." On the first occasion defendant's driver used an instrument known as an electrical shocking machine with which he "punched" the cattle out of the pile and to their feet. On the second occasion the rear end of the trailer was wedged, at a tilted angle, in the ditch and against a tree, so that it became necessary to use an ax and chop away portions of the trailer in order to allow the cattle to tumble out on the road. To add to the woes of these unfortunate animals, a truck came over the top of the hill and ran into a portion of the herd, and one cow was killed and another so seriously injured that she was hauled off on a sled. That night another cow died. Several of the cows had "premature" calves and, according to plaintiff's evidence, the remainder of the herd as a whole were a sorry lot. "Every animal in there was injured," some with one of their horns broken off, some with tails broken, udders and teats bruised, and with skinned and injured places about their bodies. The surviving members of the herd were put on pasture and sold the following month for a total of $4,014.

Plaintiff's evidence was that after the incidents here related the cattle were no longer suitable for dairy purposes and were salable only as canners and cutters at a price ranging from seventeen cents to twenty cents per pound on the nearest market; but taken individually the sur-

---

8. Gibson v. Simmons, 77 Kan. 461, 94 P. 1013; Lips v. Egan, 178 Kan. 378, 285 P.2d 767; see Wojtylak v. Kansas & Texas Coal Co., 188 Mo. 260, 87 S.W. 506, 516; Hendricks v. Brooks, 80 Kan. 1, 101 P. 622.

9. 34 Am.Jur., Limitations of Actions, sec. 224, p. 181; Gibson v. Simmons, 77 Kan. 461, 94 P. 1013; Bowman v. Bowman, 134 Kan. 477, 7 P.2d 521; Roth v. Holman, 105 Kan. 175, 182 P. 416; Williams

v. Metropolitan Street Ry., 68 Kan. 17, 74 P. 600, 64 L.R.A. 794; Investment Securities Co. v. Bergthold, 60 Kan. 813, 58 P. 469.

10. Gibson v. Simmons, 77 Kan. 461, 94 P. 1013; Baxter v. Krause, 79 Kan. 851, 101 P. 467, 23 L.R.A.,N.S., 547; Stoutenburg v. Gaston, 131 Kan. 610, 293 P. 385.

11. See Alropa Corp. v. Smith, 240 Mo. App. 376, 199 S.W.2d 866.

viving cows were worth each $180 and the heifers $120.

 The measure of damages was the difference in the market value of the herd of cattle at the point of destination in the condition they would have arrived but for the negligence of the defendant, and the market value as they did arrive.[12] Plaintiff was entitled to take the shipment *as a whole* and recover for the loss in value to that shipment. The evidence as to the injuries to the individual cattle was pertinent in order to show the damage or difference in value to the whole herd, but the issue of damages applied to the herd as a whole.[13] And it would also appear that this is a place for the application of the rule that after a person has stated the particulars of his damage it is reasonable to allow him to make a general estimate of the amount, leaving it to the cross-examination to develop the damage to each item.[14] Here the plaintiff's evidence showed the damage to, or difference in value of, the herd as a whole by individual (per cow) value and also the per pound market price after the incident. The transcript does not show the method the trial court used in computing the damages, but it would appear that, whatever method he used, it could have been only one such as to reach the lowest amount possible under the evidence. We think the defendant suffered no injury in this regard, and there was sufficient evidence of damage from which judgment could be found.

For the reasons aforesaid the judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

12. 25 C.J.S. Damages § 83b, p. 597; Colley v. Cox, Mo.App., 266 S.W.2d 778, 786–787, and cases in footnote 13.

13. See New York, Lake Erie & Western Railroad Co. v. Estill, 147 U.S. 591, 13 

S.Ct. 444, 37 L.Ed. 292, 304, 305; Morrow v. Wabash Railway Co., 219 Mo. App. 62, 265 S.W. 851, Id., Mo.App., 276 S.W. 1030, 1034.

14. 25 C.J.S. Damages § 157, p. 805.